**In re Marvin L. WARNER, Debtor.**

**Bankruptcy No. 87–1682–BKC–3P1.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

June 8, 1988.

Andrew C. Hall, Miami, Fla., Albert J. Datz, Jacksonville, Fla., for debtor.

Stephen D. Busey, Jacksonville, Fla., for Creditors' Committee.

Lynne England, Tampa, Fla., Asst. U.S. Trustee.

A. Graham Allen, Atty. for Fred M. Cone, Jr., Jacksonville, Fla.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This case is before the Court upon the Unsecured Creditors' Committee's motion to compel the production of documents from Fred Cone, Jr. ("Cone"), and for an order directing the Debtor to waive the attorney-client privilege. A hearing on the motion was held April 23, 1988, and upon the evidence and arguments presented, the Court makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. On December 10, 1987, the Court entered an order granting the motion of the Unsecured Creditors' Committee to take the examination of Fred M. Cone, Jr. pursuant to Bankruptcy Rule 2004.

2. On December 16, 1987, the Committee caused Cone to be served with a subpoena directing him to produce certain documents in connection with this examination.

3. On December 23, 1987, Cone moved for protective order and to quash the subpoena, which this Court denied on February 17, 1988. Cone was directed to produce the documents within 30 days.

4. Although Cone produced most of the documents on March 10, 1988, he refused to produce some 400 of the documents asserting the attorney-client and work product privileges.

5. On April 1, 1988, the Committee filed its motion for an order "directing the Debtor to waive the attorney-client privilege or, alternatively, to appoint a trustee."

6. On April 8, 1988, the Committee filed a motion to compel the production of documents from Cone and on April 19, 1988, filed an amendment to that motion. The hearing on these motions was then held April 23, 1988.

7. The thrust of the Committee's argument is that the documents sought to be produced are no longer privileged under the "fraud" exception to the attorney-client privilege. The debtor defends by arguing that no actual fraud has been proven.

8. Cone is an attorney licensed to practice in the state of Florida and has represented the debtor for approximately twenty years. He has also served as legal counsel for Josephine P. Warner and Marvin L. Warner, Jr. (wife and son of debtor).

9. In early March of 1985, allegations of an extraordinary fraud involving ESM Government Securities, Inc. ("ESM") became publicized. The debtor was accused of being involved in the scheme and subsequently became the subject of numerous legal actions.

10. Subsequently, on October 22, 1987, the debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code. 11 U.S.C. § 101 *et seq.*

11. Some 2½ years prior to filing for relief, debtor created a GRIT Trust (Grantor Retained Interest Trust) and reserved unto himself and his wife the right to income from this trust. Similarly, debtor also funded two other trusts, the "A.W.K. Sprinkle–Spray Trust" and the "Land Trust", to benefit his children. The creditors' committee has assailed the creation of these trusts as attempts to defeat the interests of creditors. The debtor maintains that the creation of the trusts was simply an exercise in prudent estate planning.

12. From almost four million dollars the debtor transferred to Cone's trust account in March of 1985, $750,000 was used to fund the GRIT Trust while some $2,200,000 was transferred to debtor's wife. Another one million was later transferred to the debtor's wife in connection with an amendment to the antenuptial agreement. The Committee contends that these transactions were made without consideration. Cone has declined to discuss the circumstances surrounding the creation of these trusts and has asserted the attorney-client privilege.

13. In November 1985, the debtor paid $3,500,000 in cash for a 400 acre farm near Ocala, 160 acres of which were retained by him as "homestead", 80 acres were transferred to his wife, and 160 acres were transferred to his son for a note. The "homestead" property was subsequently deeded to the debtor and his wife as tenants by the entireties. Again, Cone has claimed attorney-client privilege regarding the circumstances surrounding the purchase of this farm.

14. The Creditors' Committee has also produced numerous other documents disclosing certain transfers from the debtor to the debtor and his wife as tenants by the entireties. When asked about the transfers, Cone again asserted the attorney-client privilege.

### CONCLUSIONS OF LAW

1. The role of the attorney-client privilege is of vital importance to the legal system. It serves to promote justice and recognizes that sound legal advice or advocacy depend upon the attorney being fully informed by the client. *See, Upjohn v. U.S.*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981); *ITT Corp. v. United Telephone Co.*, 60 F.R.D. 177, 180 (M.D. Fla.1973). It is designed to promote full disclosure by the client by protecting his confidential communications with his attorney. Such disclosure would not be forthcoming if this confidence were routinely exposed.

2. In this case, the Creditors' Committee suggests that communications which assist or are in furtherance of a fraud are excepted from the attorney-client privilege. In support of its position the committee cites *Clark v. United States*, 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993 (1933), wherein the Supreme Court stated:

> There is a privilege protecting communications between attorney and client. The privilege takes flight if the relation is abused. A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law. He must let the truth be told.

*Id.* at 15, 53 S.Ct. at 469.

Similarly, the Fifth Circuit has held that the fraud exception to the attorney-client privilege comes into play whenever "the client consults an attorney for advice that will assist the client in carrying out a contemplated illegal or fraudulent scheme." *In re International Systems and Controls Corporation Securities Litigation*, 693 F.2d 1235, 1242 (5th Cir.1982). *See also, In re Grand Jury Proceedings (Andrew C. Pavlick)*, 680 F.2d 1026, 1028–1029 (5th Cir. Unit A, 1982); *In re Grand Jury Proceed-*

*ings (Robert Twist, Sr.)*, 689 F.2d 1351, 1352 (11th Cir.1982).

■ Since the policy behind the privilege is that of promoting justice, it would be sheer perversion of the privilege to extend it to an individual seeking advice which would aid him in carrying out an illegal or fraudulent objective. Advice given for such purposes is more akin to participation in a conspiracy than a rendition of professional services. Accordingly, such communications are subject to disclosure as an exception to the attorney-client privilege.

■ The Court notes the distinction between advice sought prior to the fraudulent undertaking and advice obtained after the fraud has been committed. Advice obtained in support of a legitimate defense against a charge of past crimes or misconduct, even though the individual may be guilty, is completely privileged while the former is not. Says one Court, "[t]he privileged communications may be a shield of defense as to crimes already committed, but it cannot be used as a sword or weapon of offense to enable persons to carry out contemplated crimes against society." *Gebhardt v. United Railways Co.*, 220 S.W. 677, 699 (Mo.1920).

The Court is also aware of the confidential nature of communications between an attorney and agents or employees of the client, between an attorney and an accountant consulted in connection with providing legal advice to the client, and between attorneys representing the same client. However, the Court concludes that these relationships are subject to the same exceptions as are communications directly between the attorney and client.

■ 3. To invoke the fraud exception, the moving party must make a prima facie showing that the underlying transaction to which the communication relates is fraudulent. Says the Supreme Court:

> To drive the privilege away, there must be "something to give colour to the charge;" there must be "prima facie evidence that it has some foundation in fact."

*Clark v. United States*, 289 U.S. 1, 15, 53 S.Ct. 465, 469, 77 L.Ed. 993 (1933).

"Prima facie" in this context means a showing, which if unrebutted, would result in a finding of fraud. *See In re International Systems and Controls Corp.*, 693 F.2d 1235, 1242 (5th Cir.1982). Mere allegations or suspicions of fraud are not enough. In *International Systems and Controls*, the Fifth Circuit adopted a two prong test for making a prima facie showing:

> First, there must be a prima facie showing of a violation sufficiently serious to defeat the work product privilege. Second, the court must find some valid relationship between the work product under subpoena and the prima facie violation.

*Id.* at 1242.

4. In this case, the Creditors' Committee has challenged the validity of certain transfers made by the debtor into exempt assets. Under the Bankruptcy Code, the validity of such transfers will be governed by either § 544 or § 548 of the Bankruptcy Code. In either case, the transfers may be voided if the debtor's actual intent to hinder, delay or defraud his creditors is found.

■ 5. Because proof of actual intent is often unavailable through direct evidence, courts have traditionally relied upon certain well-defined badges or indicia of fraud to presume fraudulent intent. These indicia include:

> (1) A relationship between the debtor and the transferee;
>
> (2) Lack of consideration for the conveyance;
>
> (3) Insolvency or indebtedness of the debtor;
>
> (4) The transfer of the debtor's entire estate;
>
> (5) Reservation of benefits, control or dominion by the debtor;
>
> (6) Secrecy or concealment of the transaction;
>
> (7) Pendency or threat of litigation at the time of the transfer.

*See In re Steele*, 79 B.R. 503, 504 (Bkrptcy. M.D.Fla.1987); *In re Porter*, 37 B.R. 56, 60–61 (Bkrptcy.E.D.Va.1984); *Cleveland*

*Trust Co. v. Foster,* 93 So.2d 112 (Fla. 1957).

The Court finds the language set forth in *United States v. Fernon,* 640 F.2d 609, 613 (5th Cir.1981), particularly persuasive on this point:

'A fraud upon creditors consists in the intention by the debtor to prevent his creditors from recovering their just debts by withdrawing his property from the reach of his creditors.' ... This intention can be found by the existence of certain indicia or badges of fraud. These involve the following considerations: (1) lack of consideration for the transfer; (2) close family relationship between the transferor and the transferee; (3) pending or threatened litigation against the transferor; and (4) insolvency or substantial indebtedness of the transferor. '[W]hile a badge of fraud standing alone may amount to little more than a suspicious circumstance, insufficient in itself to constitute a fraud per se, several of them when considered together may afford a basis from which its existence is properly inferable.' (Citations omitted).[1]

6. Although the Committee has not yet proven debtor's intent in regard to the various transactions, it has at least raised the inference that the transfers may have been fraudulent. These inferences have been unrebutted to this point, save debtor's assertion that the transfers were part of an elaborate estate planning scheme. Accordingly, the Court concludes that the Committee has made a prima facie showing sufficient enough to call into play the "fraud" exception to the attorney-client privilege and is entitled to have those documents which might be construed as evidence of a fraudulent intent produced.

7. Having made this finding, the Court does not believe that the blanket production of all documents claimed as privileged would be appropriate in this instance. Instead, the debtor will only be required to produce those documents which may be construed as evidence of fraudulent intent. The debtor's right to assert the attorney-client privilege will in all other respects remain intact.

8. The Court further concludes that the Committee is not entitled to the production of any documents which fall within the scope of the work product privilege as defined in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), or which reflect Cone's mental impressions, conclusions, opinions, or legal theories developed in connection with this case.

9. To resolve this present dispute, the Court has decided to conduct an *in camera* examination of the documents and will determine for itself whether the documents sought to be produced evidence debtor's fraudulent intent. Counsel will be directed by separate order to produce these documents in an appropriate manner.

The Court will enter a separate order in accordance with these findings.

## ORDER COMPELLING THE PRODUCTION OF DOCUMENTS FOR IN CAMERA INSPECTION

Upon Findings of Fact and Conclusions of Law separately entered, it is

ORDERED AND ADJUDGED:

1. The Creditors' Committee's Motion to Compel is GRANTED IN PART.

2. Fred M. Cone, Jr., is hereby directed to produce for *in camera* inspection all documents listed on the Creditors' Committee's Exhibit 15 at the conclusion of the hearings scheduled in this case on July 1, 1988, at 8 o'clock, a.m.

3. A. Graham Allen, or such other counsel as directed by Mr. Cone, shall prepare a list identifying each document by number and the factual basis for the privilege or privileges asserted in sufficient detail to enable the Court to determine whether the documents are privileged. Citations to legal authority may be included wherever appropriate.

---

1. The Eleventh Circuit has adopted the case law of the former Fifth Circuit as its governing body of precedent. *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc); *Kingston Shipping Co. v. Roberts,* 667 F.2d 34 (11th Cir. 1982). Accordingly such precedent is binding upon this Court.

4. Each party is invited to submit written memorandum of law indicating the appropriate standard to be applied in determining whether a particular document is privileged.

5. The Creditors' Committee's motion to direct the Debtor to waive the attorney-client privilege or alternatively to appoint a trustee is DENIED.