In re John A. **ANDREWS**, Debtor.

**RIGGS NATIONAL BANK**, American Security Bank, Plaintiffs,

v.

John A. **ANDREWS**, Defendant.

Bankruptcy No. 92–14879–AT.
Adv. No. 93–1012.

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

July 25, 1995.

---

Wayne G. Travell, Washington, DC, for debtor.

Brian F. Kenney, Fairfax, VA, for Nations-Bank.

William Trencher, Washington, DC, for Riggs National Bank of Washington, D.C.

### MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

Hearing was held May 17, 1995, on the motion of nonparty Stefan F. Tucker, Esq., for a protective order precluding the taking of Tucker's deposition in connection with an adversary proceeding filed against Debtor John A. Andrews. Tucker alleged that any relevant information that he might possess was protected by the attorney-client privilege. Plaintiffs argued that the information sought falls within the crime/fraud exception to the attorney-client privilege and is, therefore, discoverable. The court took the matter under advisement. For the reasons stated in this memorandum opinion, the court will enter an order denying the motion for a protective order for any communications concerning a continuing or contemplated fraud. To the extent plaintiffs seek to elicit information from communications regarding legal ad-

vice on past fraud, the court will enter a protective order.

## Findings of Fact[1]

On May 10, 1991, First American Bank of Virginia obtained a confessed judgment in state court against Debtor John A. Andrews in the amount of $1,275,000.00. First American again obtained a confessed judgment against debtor on September 13, 1991, in the amount of $500,000.00. On September 19, 1991, First American obtained a confessed judgment against debtor in the additional amount of $137,333.00.

Tucker, Flyer represented debtor in these actions and filed motions to set aside the confessed judgments. On March 26, 1992, the state court denied the motions and granted plaintiffs $100,000.00 in fees on May 29, 1992.

Debtor John A. Andrews filed a chapter 7 bankruptcy petition on October 14, 1992.

Plaintiffs Riggs National Bank and American Security Bank filed an adversary proceeding against debtor objecting to debtor's discharge under 11 U.S.C. § 727(a)(2), alleging that debtor transferred property within the year preceding his bankruptcy case with the intent to hinder, delay, or defraud his creditors.

On April 17, 1995, plaintiffs served a subpoena on Tucker, seeking to compel his attendance at a discovery deposition in this matter. Tucker is a founder, a senior attorney, and a principal in Tucker, Flyer and Lewis. Tucker has represented debtor on numerous prepetition matters. Mr. Wayne Travell, a member of Tucker, Flyer is debtor's bankruptcy counsel.

Although there are many transfers at issue in the underlying adversary proceeding objecting to debtor's discharge, the specific facts surrounding the transfers of which plaintiffs desire further discovery are as follows:

1. **Windward Passage, L.P.** Windward Passage, L.P., is a Virginia limited partnership. Debtor owned his 49.5% limited partnership interest individually. Windward Passage owns an unimproved lot known as Lot 5C, Peter Bay Subdivision, United States Virgin Islands. On April 1, 1992, debtor executed a Distribution and Nominee Agreement drafted by Tucker, Flyer. By the term of the agreement, Windward Passage distributed all of its beneficial interest in the property to the partners, debtor and Scott Meese. Debtor and Meese then contributed all of their beneficial interest in the property to Catherineberg Fund Limited Partnership. Debtor owns his 49.5% limited partnership interest in Catherineberg Fund as tenants by the entireties with his wife. Under this agreement Windward Passage would continue to hold the property as "nominee, agent and straw party for Catherineberg." No evidence of consideration has been presented for the transfer of debtor's interest in the property to Catherineberg Fund. The transfer is not listed in debtor's schedules or statement of affairs. After the filing of this adversary proceeding, Windward Passage and Catherineberg Fund entered into a termination agreement which purports to the terminate the distribution and nominee agreement.

2. **1986 Ferrari Automobile.** Debtor initially owned a 1986 Ferrari individually. Debtor paid $128,000.00 for the automobile in 1986. On October 23, 1991, debtor filed an application for a certificate of title to add his wife to the title. The certificate of title was issued on October 23, 1991, naming debtor and Helen Andrews as joint title holders. Debtor sold the car to a dealership in Massachusetts. The current whereabouts of the vehicle is unknown. A Fax cover sheet from debtor to Tucker concerning the retitling is dated "10/92," a year after the alleged fraudulent transfer of title occurred.

3. **$50,000 Escrow Account at Tucker, Flyer:** During the year preceding his bankruptcy case, debtor set up an escrow account at Tucker, Flyer to which he transferred an amount in excess of $50,000.00. The escrow account was used to pay some of debtor's creditors. Debtor

1. The Findings of Fact are made solely for the disposition of the motion for a protective order and are not binding on the parties in the underlying adversary proceeding.

admitted that he established the account to avoid garnishment of the funds.

Debtor discussed each transfer with Tucker before conveying the subject property.

### Position of Parties

Plaintiffs argue that Tucker should appear at a deposition and testify about his conversations with debtor regarding the questioned transfers. Plaintiffs claim that the communications are excepted from the attorney-client privilege because the discussions involved a continuing fraud.

Tucker alleges any relevant information that he might possess about the transactions is protected by the attorney-client privilege. Tucker claims that there are legitimate, legal explanations for the transfers, and that, therefore, he has rebutted the prima facie case of fraud. Tucker also alleges that plaintiff's discovery request is a trial tactic to force debtor to obtain new counsel.

### Discussion and Conclusions of Law

The crime/fraud exception to the attorney-client privilege has been recognized in this country for many years. *See Clark v. United States,* 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993 (1933); *In re Grand Jury Proceedings,* 727 F.2d 1352, 1355 (4th Cir.1984). As the Supreme Court held, "[a] client who consults an attorney for advice that will serve him in commission of a fraud will have no help from the law. He must let the truth be told." *Clark,* 289 U.S. at 14, 53 S.Ct. at 469.

■ In essence, a client's communication with his attorney is not privileged if it involves a continuing or contemplated crime or fraud. *See In re Grand Jury Subpoena,* 884 F.2d 124, 127 (4th Cir.1989). Furthermore, an attorney's knowledge of the client's wrongful intent is irrelevant. *Clark,* 289 U.S. at 15, 53 S.Ct. at 469–70; *see also United States v. Ballard,* 779 F.2d 287, 292–93 (5th Cir.), *cert. denied,* 475 U.S. 1109, 106 S.Ct. 1518, 89 L.Ed.2d 916 (1986).

■ The crime/fraud exception applies to fraudulent transfers in the bankruptcy context. *See Ballard,* 779 F.2d 287; *In re Hunt,* 153 B.R. 445 (Bankr.N.D.Tex.1992); *In re Cumberland Inv. Corp.,* 120 B.R. 627 (Bankr. D.R.I.1990).

■ In order to invoke the crime/fraud exception, the movant must make a prima facie showing that the communications were either made for an unlawful purpose or that the communications reflect ongoing or future unlawful activity. *X Corp. v. Doe,* 805 F.Supp. 1298, 1306 (E.D.Va.1992). The movant does not have to conclusively prove the elements of the purported crime or fraud, *X Corp.,* 805 F.Supp. at 1307, but the movant must show that the client possessed the requisite intent. *Industrial Clearinghouse, Inc. v. Browning Mfg. Div. of Emerson Elec. Co.,* 953 F.2d 1004, 1008 (5th Cir.1992).

■ Pursuant to § 727(a)(2)(A), plaintiffs object to debtor's discharge. Under this section a debtor is not entitled to a discharge if he transferred, within one year before the date of the bankruptcy filing, property with the intent to hinder, delay, or defraud creditors. "Because proof of actual intent [of fraudulent transfers to hinder, delay or defraud creditors] is often unavailable through direct evidence, courts have traditionally relied upon certain well-defined badges or indicia of fraud to presume fraudulent intent." *In re Warner,* 87 B.R. 199, 202 (Bankr. M.D.Fla.1988). The indicia include: (1) A relationship between the debtor and the transferee; (2) Lack of consideration for the conveyance; (3) Debtor's insolvency or indebtedness; (4) Transfer of debtor's entire estate; (5) Reservation of benefits, control, or dominion by the debtor; (6) Secrecy or concealment of the transaction; and (7) Pendency or threat of litigation at the time of transfer. *See In re Warner,* 87 B.R. at 202; *In re Porter,* 37 B.R. 56, 60–61 (Bankr. E.D.Va.1984).

■ As the Fifth Circuit held,
'A fraud upon creditors consists in the intention by the debtor to prevent his creditors from recovering their just debts by withdrawing his property from the reach of his creditors.' ... This intention can be found by the existence of certain indicia or badges of fraud. These involve the following considerations: (1) lack of consideration for the transfer; (2) close

family relationship between the transferor and the transferee; (3) pending or threatened litigation against the transferor; and (4) insolvency or substantial indebtedness of the transferor. '[W]hile a badge of fraud standing alone may amount to little more than a suspicious circumstance, insufficient in itself to constitute a fraud per se, several of them when considered together may afford a basis from which its existence is properly inferable.'

*United States v. Fernon,* 640 F.2d 609, 613 (5th Cir.1981) (citations omitted).

■ In the case of the transfer of the interest in real property in the Virgin Islands, debtor concedes that he consulted with Tucker, Flyer prior to the Windward Passage transfer. Debtor executed an agreement drafted by Tucker, Flyer. By the terms of the agreement, Windward Passage distributed all of its beneficial interest in the property to the partners, debtor and Scott Meese. (Debtor individually owns the interest in Windward Passage.) Debtor and Meese then contributed all of their beneficial interest in the property to Catherineberg Fund Limited Partnership. (Debtor owns his 49.5% limited partnership interest in Catherineberg Fund as tenants by the entireties with his wife.) There is no evidence that Catherineberg Fund gave any consideration for the transfer. Under this agreement Windward Passage would continue to hold the property as "nominee, agent and straw party for Catherineberg." Furthermore, there is no evidence that the transfer was recorded in land records, and debtor did not list the transfer in his schedules. Finally, the transfer occurred a few days after a state court declined to set aside large judgments that had been entered against debtor.

Debtor claims that he transferred the property interest for legitimate business purposes and that he has, therefore, rebutted movant's prima facie case. Contrary to debtor's assertion, he has not rebutted the prima facie case. Debtor fails to explain why no consideration was exchanged, why Windward Passage was to hold the property as a straw party for Catherineberg Fund, why he ne-

glected to record the transfer, and why he did not list the transfer in his schedules.

Based on the unrefuted indicia of fraudulent intent, debtor's communications with counsel regarding the transfer are excepted from the attorney-client privilege. Debtor's argument that the transfer was subsequently reversed is irrelevant. Even assuming that the termination agreement reverses the distribution and nominee agreement, the indicia of fraud to presume debtor's fraudulent intent are unaffected. Furthermore, debtor did not attempt to reverse the transaction until after this adversary proceeding was commenced and after the trustee had filed an adversary proceeding to avoid the transfer.

■ In the case of the 1986 Ferrari, debtor initially owned the automobile individually. Approximately one month after the large judgments in excess of 1.9 million dollars were confessed against debtor, he filed an application for a certificate of title to add his wife to the title. The certificate of title was issued on October 23, 1991, naming debtor and Helen Andrews as joint title holders. Debtor stated in a state court deposition that he conferred with Tucker before he added his wife to the title. Debtor now argues that the original title of the car was supposed to be in the name of him and Mrs. Andrews and that the retitling merely corrected the error.

The court finds that the indicia of fraud outweigh the alleged explanation. However, the court limits discovery on this issue to events prior to the retitling. Communications occurring after the car was retitled are protected.[2] *See United States v. Zolin,* 491 U.S. 554, 562–63, 109 S.Ct. 2619, 2625–26, 105 L.Ed.2d 469 (1989) (holding "communications seeking legal advice regarding past crimes or frauds are ... privileged").

■ In the case of the $50,000 escrow account at Tucker, Flyer, debtor established the account at Tucker, Flyer with an excess of $50,000.00 during the year preceding the filing of his bankruptcy case and within close proximity to the entry of plaintiffs' judgment debts. It is undisputed that debtor paid

---

2. The Fax cover sheet from debtor to Tucker concerning the retitling is dated "10/92," a year after the alleged fraudulent transfer of title occurred.

creditors with funds from the account. In fact, debtor admitted that he established the account to avoid garnishment of the funds but argued that it is not illegal to pay certain creditors ahead of others.

Debtor's statement in the abstract may be correct; however, fraudulent transfers and preferential transfers are subject to avoidance actions in bankruptcy. The court does not nor am I required to determine whether debtor intended to defraud his creditors in this motion for a protective order; the badges of fraud are enough to establish a prima facie case of fraud which excepts the communications from the attorney-client privilege.

Although it is abundantly clear to the court that counsel for both parties are skeptical of opposing counsel, debtor's counsel has presented no evidence of any improper motive of plaintiff's counsel. Given the substantial indicia of fraud surrounding the transfers, the logical conclusion is that counsel seeks to discover further information about debtor's intent to hinder and delay creditors.

Although plaintiffs have not yet proven debtor's intent in regard to the questioned transactions, plaintiffs have raised through the indicia of fraud the inference that the transfers may have been fraudulent. This prima facie showing of fraud is sufficient to warrant applying the crime/fraud exception to the attorney-client privilege.[3] *See In re Warner*, 87 B.R. at 203. At trial, the court is committed to hearing admissible evidence relating to the transfers, and then I will make an objective determination of the issues on the merits.

ACCORDINGLY, the court will enter a separate order denying Tucker, Flyer's motion for a protective order for any communications concerning a continuing or contemplated fraud. To the extent plaintiffs seek to elicit information from communications regarding legal advice on past fraud, the court will enter a protective order.

---

**3.** The court does not infer any ill motive on the part of counsel nor does the court have to make such a finding. *See Clark,* 289 U.S. at 15, 53 S.Ct. at 469–70; *Ballard,* 779 F.2d at 292–93.