In re **COLLEGE LANDINGS LIMITED PARTNERSHIP,** Debtor.

No. 96–13551–8G1.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

March 10, 1998.

Don M. Stichter, Tampa, FL, for College Landings Limited Partnership, St. Petersburg, FL.

David W. Steen, Tampa, FL, for creditors Committee.

## ORDER ON MOTION TO COMPEL RICHARD BENWARE TO PRODUCE PURSUANT TO A SUBPOENA SERVED SEPTEMBER 12, 1997, AND ON RICHARD BENWARE'S MOTION FOR PROTECTIVE ORDER AND MOTION FOR ATTORNEY'S FEES

PAUL M. GLENN, Bankruptcy Judge.

**THIS CASE** came before the Court for hearing to consider a Motion to Compel Richard Benware to Produce Pursuant to a Subpoena Served September 12, 1997, filed by Eckerd College Properties, Inc. and Eckerd College, Inc. (collectively, Eckerd), and also to consider a Motion for Protective Order and Motion for Attorney's Fees filed by Richard Benware (Benware). The discovery dispute presented by the motions centers on a memorandum prepared by Benware on August 11, 1997, and delivered to his attorney, Gregory Mierzwinski (Mierzwinski). Eckerd seeks production of the memorandum pursuant to a subpoena issued on September 12, 1997. Benware claims that the document is protected by the attorney-client privilege set forth in Section 90.502 of the Florida Statutes.

The issue is whether the memorandum falls within the "crime-fraud exception" to the attorney-client privilege, and whether Benware may therefore be compelled to produce the document pursuant to the subpoena.

The Debtor, College Landings Limited Partnership, was originally formed to develop a residential community on a parcel of real property located in St. Petersburg, Florida. Eckerd College Properties, Inc. is the owner of the property upon which the project was to be developed, and the Debtor leased the property from Eckerd pursuant to a long-term lease. Benware is an insider of the Debtor who was scheduled as a creditor in the chapter 11 case.

In the chapter 11 case, Eckerd objected to the filed and scheduled claims of Benware and other insiders, and requested the Court to subordinate the claims and votes of the insiders. While these contested matters were pending, Benware entered a settlement agreement with Eckerd.

In the Motion to Compel under consideration, Eckerd makes the following allegations:

1. Benware and Eckerd entered a settlement agreement dated August 8, 1997. Pursuant to the settlement, Benware agreed not to interfere with the affairs of the Debtor, and also agreed to testify truthfully as to the affairs of the Debtor upon the reasonable request of Eckerd.

2. Benware and his attorney, Mierzwinski, attended a deposition of Eckerd's president on September 8, 1997, and Mierzwinski had in his possession at that deposition a memorandum dated August 11, 1997, from Benware to Mierzwinski.

3. On September 12, 1997, Eckerd served a subpoena on Benware to produce the memorandum dated August 11, 1997.

4. Benware prepared the memorandum "in an obvious effort to assist Mr. Mierzwinski in this bankruptcy case as to other creditors is [sic] in direct contravention to the Settlement Agreement."

The above statements represent the entirety of the written allegations to support Eckerd's claim that it is entitled to production of the memorandum. At the hearing on the Motion, Eckerd asserted that Benware fraudulently induced Eckerd to enter into the settlement agreement, that Benware has used his lawyers to engage in an ongoing fraud and conspiracy, and that he has used his lawyers to hide and conceal fraudulent acts. Eckerd cited *In re Warner,* 87 B.R. 199 (Bankr.M.D.Fla.1988) for authority that the memorandum is therefore discoverable under the fraud exception to the attorney-client privilege. As an alternative to production, Eckerd requested the Court to review the memorandum

in camera to determine if the memorandum should be produced.

Benware filed a Memorandum in Opposition to the Motion to Compel, a Motion for Protective Order, and a Motion for Attorney's Fees. In his opposition, Benware states that the memorandum was located in Mierzwinski's file at the deposition on September 8, 1997, and that Eckerd's attorney "looked across the table into Mr. Mierzwinski's files, and read upside down the fact that there was a memorandum from Mr. Benware to Mr. Mierzwinski" contained in the file. Benware contends that the memorandum was a confidential communication within the meaning of Section 90.502(1)(c) of the Florida Statutes, and that the memorandum is protected by the attorney-client privilege set forth in Section 90.502(2) of the Florida Statutes. Benware further contends that he never intended to disclose the memorandum or waive the privilege, and that Eckerd bears the burden of showing that the privilege does not apply.

## Discussion

Rule 501 of the Federal Rules of Evidence provides that, unless otherwise prescribed, the privilege of a witness or person "shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."

■■■ "Federal common law recognizes an attorney-client privilege that protects from discovery communications from a client to an attorney for the purpose of obtaining legal advice, provided they were intended to be confidential." 6 James Wm. Moore et al., *Moore's Federal Practice* § 26.49[1] (3d ed.1997). Generally, however, if a client seeks legal advice from an attorney in furtherance of a crime or fraud, the attorney-client communications are not privileged. *Moore's*, at § 26.49[6]. See, also, *United States v. Zolin*, 491 U.S. 554, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989).[1]

■■■ To establish the crime-fraud exception to the attorney-client privilege, the party seeking the discovery must initially make a prima facie showing of the underlying crime or fraud. The Third Circuit Court of Appeals addressed the evidentiary standard required to establish the exception in *Haines v. Liggett Group Inc.*, 975 F.2d 81 (3d Cir.1992). The Third Cir-

1. In *Zolin*, the Supreme Court explains the long-standing privilege of confidential communications between clients and their attorneys, and the basis of the crime-fraud exception to the privilege:

Questions of privilege that arise in the course of the adjudication of federal rights are "governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." ... We have recognized the attorney-client privilege under federal law, as "the oldest of the privileges for confidential communications known to the common law." ... Although the underlying rationale for the privilege has changed over time, ... courts long have viewed its central concern as one "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." ... That purpose, of course, requires that clients be free to "make full disclosure to their attorneys" of past wrongdoings, ... in order that the client

may obtain "the aid of persons having knowledge of the law and skilled in its practice." ...

The attorney-client privilege is not without its costs.... "[S]ince the privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose." ... The attorney-client privilege must necessarily protect the confidences of wrongdoers, but the reason for that protection—the centrality of open client and attorney communication to the proper functioning of our adversary system of justice—"ceas[es] to operate at a certain point, namely, where the desired advice refers not to prior wrongdoing, but to future wrongdoing." ... It is the purpose of the crime-fraud exception to the attorney-client privilege to assure that the "seal of secrecy," ... between lawyer and client does not extend to communications "made for the purpose of getting advice for the commission of a fraud" or crime....

*Zolin*, 491 U.S. at 562, 109 S.Ct. 2619 [Citations omitted].

cuit quoted *Clark v. United States,* 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993 (1933), as follows:

> To drive the privilege away, there must be "something to give colour to the charge;" there must be "prima facie evidence that it has some foundation in fact." When the evidence is supplied, the seal of secrecy is broken.

*Clark,* 289 U.S. at 14–15, 53 S.Ct. 465. The Third Circuit concluded that the issue in determining whether a prima facie showing had been made is whether "the party seeking discovery presented evidence which, if believed by the fact-finder, supports plaintiff's theory of fraud," or in other words, whether the "evidence which, if believed by the fact-finder, would be sufficient to support a finding that the elements of the crime-fraud exception were met." *Haines,* 975 F.2d at 95–96. The Third Circuit's decision in *Haines* is clear that this prima facie showing is an initial showing or burden that is required of the party seeking the discovery. If the party makes the prima facie showing, the party invoking the privilege then has the opportunity to present evidence and argument to explain the charges against him, and the court then balances or weighs the evidence. *Id.* at 97.

The standard is also consistent with the Bankruptcy Court's decision in *In re Warner,* 87 B.R. 199 (Bankr.M.D.Fla.1988), the case cited by Eckerd to support its position with respect to the exception. In *Warner,* the Bankruptcy Court stated:

> To invoke the fraud exception, the moving party must make a prima facie showing that the underlying transaction to which the communication relates is fraudulent. . . .
>
> "Prima facie" in this context means a showing, which if unrebutted, would result in a finding of fraud. (Citation

omitted). Mere allegations or suspicions of fraud are not enough.

*Warner,* 87 B.R. at 202. The Court concluded in *Warner* that the party seeking the discovery had made a prima facie showing that the transfers referred to in the documents at issue may have been fraudulent. The prima facie showing was made by virtue of independent evidence regarding the creation of certain trusts, the transfer of approximately four million dollars, the purchase of substantial real property for cash, and the transfer of other property into a tenancy by the entirety.

■ Further, the standard for evaluating the crime-fraud exception under Florida state law[2] is generally the same as the standard under federal law. The Florida Evidence Code is contained in Chapter 90, Florida Statutes. Section 90.502(2) defines the lawyer-client privilege, and section 90.502(4)(a) provides a crime-fraud exception. In *American Tobacco Company v. State of Florida,* 697 So.2d 1249 (Fla. 4th DCA 1997), Florida's Fourth District Court of Appeal accepted and applied the standard of proof set forth by the Third Circuit Court of Appeals in *Haines.*

> What this means to us is that the party opposing the privilege on the crime-fraud exception has the initial burden of producing evidence which, if unexplained, would be prima facie proof of the existence of the exception. The burden of persuasion then shifts to the party asserting the privilege to give a reasonable explanation of the conduct or communication.

*American Tobacco,* 697 So.2d at 1256. According to the court in *American Tobacco,* the application of the "prima facie evidence standard" to establish the crime-fraud exception is consistent with the "vast majority of state and federal courts." *Id.*

■ As stated above, in this case Eckerd requested the Court to review the

---

**2.** "... [I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law." Rule 501, Federal Rules of Evidence.

memorandum in camera to determine if it should be produced. The United States Supreme Court has explained the circumstances under which such reviews are appropriate:

> We hold that in camera review may be used to determine whether allegedly privileged attorney-client communications fall within the crime-fraud exception. We further hold, however, that before a district court may engage in in camera review at the request of the party opposing the privilege, that party must present evidence sufficient to support a reasonable belief that in camera review may yield evidence that establishes the exception's applicability....

*Zolin,* 491 U.S. at 574–575, 109 S.Ct. 2619.

■ In this case, the Court concludes that Eckerd has not met its initial burden of presenting "something to give colour to the charge" that Benware engaged in fraudulent conduct, and that Eckerd has not made a prima facie showing that the charges of fraud have "some foundation in fact." See *Clark v. United States,* 289 U.S. 1, 14–15, 53 S.Ct. 465, 77 L.Ed. 993 (1933). Eckerd's only written allegation to support application of the fraud exception is that the August 11 memorandum represents an "obvious effort" to assist Mierzwinski in the bankruptcy case in violation of the parties' settlement agreement. At the hearing, Eckerd made only conclusory arguments that Benware was engaged in fraudulent activity and used his lawyer to conceal or advance the activity. These conclusory statements constitute the only record before the Court regarding Benware's conduct. There are no factual allegations, and no assertions of any specific, independent circumstances that might suggest fraudulent conduct on the part of Benware. Eckerd has provided no basis in fact to establish a prima facie showing that Benware is engaged in fraudulent activity or to support a reasonable belief that in camera review may yield evidence that establishes the exception's applicability.

The memorandum dated August 11, 1997, from Benware to Mierzwinski is a confidential communication protected by the attorney-client privilege. Eckerd has not made a prima facie showing that the crime-fraud exception to the privilege applies in this case. Eckerd's motion to compel Benware to produce the August 11 memorandum should be denied, and Benware's Motion for Protective Order should be granted.

### Benware's Motion for Attorney's Fees

■ Benware coupled its Motion for Protective Order with a Motion for Attorney's Fees, which is based on the contention that Eckerd knew or should have known that the memorandum was protected by the attorney-client privilege, and that the motion to compel therefore was not substantially justified.

Rule 37(a) of the Federal Rules of Civil Procedure relates to motions to compel disclosure or discovery. Rule 37(a)(4)(B) provides:

> **(a) Motion for Order Compelling Disclosure or Discovery.** A party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling disclosure or discovery as follows:
>
> .    .    .    .    .
>
> (B) If the motion is denied, the court may enter any protective order authorized under Rule 26(c) and shall, after affording an opportunity to be heard, require the moving party or the attorney filing the motion or both of them to pay to the party or deponent who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney's fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust.

Benware contends that Eckerd's Motion to Compel was not substantially justified within the meaning of Rule 37(a)(4)(B), and that he is therefore entitled to an

award of attorney's fees for his defense of the motion.

■ The term "substantially justified" is not defined in the Rule. The term has been interpreted in other contexts, however, and it appears that a moving party's justification is generally tested by an objective standard. A position is "substantially justified" if it is "justified to a degree that would satisfy a reasonable person— i.e. when it has a reasonable basis in both law and fact." *United States v. Jones*, 125 F.3d 1418, 1425 (11th Cir.1997) (Equal Access to Justice Act); *In re Amici*, 187 B.R. 1004, 1008 (Bankr.M.D.Fla.1995) (Internal Revenue Code).

■ Benware's Motion for Attorney's Fees should be denied. Eckerd sought production of the August 11 memorandum pursuant to the crime-fraud exception to the attorney-client privilege. It is clear that both federal and state law recognize such an exception. Consequently, documents that are otherwise privileged may be discoverable by an opposing party under certain circumstances. The application of the crime-fraud exception is dependent on the facts and circumstances of each case, and courts from time to time must weigh conflicting assertions regarding the exception. See *Haines, supra*. In this case, it appears undisputed that a memorandum is in existence that is dated approximately three days after the parties had entered a settlement agreement. Notwithstanding the need to discourage abuses of the discovery process, therefore, the Court is reluctant to place a "chilling effect" on legitimate discovery efforts by any party, especially where the moving party has not otherwise employed patently objectionable discovery methods. *Reygo Pacific Corporation v. Johnston Pump Company*, 680 F.2d 647, 649 (9th Cir.1982). Benware's Motion for Attorney's Fees should be denied.

Accordingly:

**IT IS ORDERED** that:

1. The Motion to Compel Richard Benware to Produce Pursuant to a Subpoena Served September 12, 1997, filed by Eckerd College Properties, Inc. and Eckerd College, Inc. is denied.

2. The Motion for Protective Order filed by Richard Benware is granted.

3. The Motion for Attorney's Fees filed by Richard Benware is denied.