**In re Fred T. CAMPBELL, Debtor.**

**Bankruptcy No. 98–10556–3F1.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Jan. 31, 2000.

Robert Altman, Robert Altman, P.A., Palatka, FL, for Debtor.

Jonathan L. Hauser, Mays & Valentine, L.L.P., Norfolk, VA, for FUNB.

Raymond R. Magley, Smith Hulsey & Busey, Jacksonville, FL, for FUNB.

Aaron Cohen, Pinkston, Cohen & Pinkston, Jacksonville, FL, for Cook, Ware & Heyward P.C. and Gary S. Cook.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This Case is before the Court on the Motion for Order Compelling Production of Documents Pursuant to Rule 9016 of the Federal Rules of Bankruptcy Procedure filed by First Union National Bank ("First Union") on November 15, 1999. (Doc. 102.) After a hearing on this Motion on January 6, 2000, the Court took the matter under advisement. Upon review of the evidence presented and the arguments and submissions of counsel, the Court makes

the following Findings of Fact and Conclusions of Law.[1]

### FINDINGS OF FACT

The parties stipulated to the entry of evidence presented during an evidentiary hearing held in this case on June 10–11, 1999 on the Motion of First Union National Bank to Transfer Venue to Eastern District of Virginia (Richmond Division) Pursuant to 28 U.S.C. § 1412 and Bankruptcy Rule 1014(a) ("Venue Motion"). Additionally, the Court incorporates findings of fact from its published Findings of Fact and Conclusions of Law (Doc. 83) supporting the Court's ruling on the Venue Motion. *See In re Campbell,* 242 B.R. 740 (Bankr.M.D.Fla.1999).

On December 15, 1998 Fred T. Campbell ("Debtor") filed for Chapter 11 bankruptcy relief. While the Venue Motion was pending before this Court, First Union served a subpoena on Gary S. Cook ("Cook"), individually and as Custodian of Records for Cook, Ware & Heyward, P.C. (First Union's Ex. 1.) First Union commanded Cook to produce:

All documents relating to (1) the establishment of Buccaneer Limited Partnership, (2) the transfer of assets into or out of Buccaneer Limited Partnership, (3) the purchase of 13 Westwood, Nelson County, Virginia by the Debtor herein; (4) the origination or assumption of loan number 5103806 through Countrywide Home Loans by Debtor herein, (5) placement of lien by Marketplace Endeavors on Debtor's property at 9810 Kingsbridge Road, Va. or 104 Surfview Drive, Unit 1101, Palm Coast, Florida (6) estate planning for Debtor (7) the existence of Fred T. Campbell, Inc. including corporate books, tax returns, charter; minutes of meetings, mergers and transfers of assets into or out of Fred T. Campbell, Inc. (8) the establishment of accounts with Bank of Commerce and/or First Regional Bank or

<hr />

1. The Court finds substantive and procedural guidance in Chief Judge George L. Proctor's decision in *In re Warner,* 87 B.R. 199 (Bankr. M.D.Fla.1988).

any other financial institution (9) the investment of any assets in accounts with Bank of Commerce and/or First Regional Band and (10) the Debtor's investment of assets with International Fund Management, Ltd. This subpoena includes but is not limited to any communication between Gary S. Cook and B. Roland Frasier, III, B. Roland Freasier, Jr. or the Debtor.

On July 6, 1999, Cook served an Objection to Document Subpoena on First Union. Cook claims the subpoena requests documents "protected from disclosure by the attorney/client privilege as to which no exception applies and no waiver has taken place", including:

a. Documents containing or constituting communications by Fred T. Campbell for the purpose of securing advice or legal services either from Gary S. Cook or other attorneys employed by Fred T. Campbell to provide legal services and advice.

b. Documents containing or transmitting legal advice, disclosure of which would reveal confidential communications or information communicated by Fred T. Campbell, in confidence, for the purpose of securing advice for legal services.

Additionally, Cook claims the subpoena requests documents protected from disclosure by the attorney work product, including:

a. Documents containing counsel's mental impressions and/or analysis regarding pending or threatened litigation between Fred T. Campbell and First Union,

b. Documents containing counsel's mental impressions and/or analysis regarding pending bankruptcy litigation or contested matters.

Cook also notes that a substantial number of nonprivileged documents covered by the subpoena have already been produced to First Union and that certain requests are unduly burdensome, vague and overbroad.

On August 3, 1999 First Union filed a motion to compel production of documents from the law firm of Cook, Ware, & Heyward, P.C. and Gary S. Cook, Esq. in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division. On September 23, 1999 the Honorable Douglas O. Tice, Jr. held a hearing on the motion to compel and took the matter under advisement. Chief Judge Tice indicated in a letter that he was inclined to grant the motion. However, on October 26, 1999 Chief Judge Tice dismissed First Union's motion to compel upon learning of this Court's finding that venue in Florida was proper.

On November 15, 1999 First Union filed the motion currently before the Court seeking an order compelling the production of documents from Cook, individually, and Cook, Ware & Heyward, P.C. and overruling the Objection to Document Subpoena. First Union's memorandum in support of its motion contends that these documents are excepted from attorney-client and work-product privileges under the crime-fraud exception. First Union states that in 1997 Debtor consulted B. Roland Freasier, Jr., B. Roland Frasier, III, and Gary S. Cook as to how to protect Debtor's assets from monetary claims of First Union. First Union claims that as a result of this advice Debtor made various asset transfers with the purpose of protecting these assets from First Union.[2] First Union claims that certain documents in Cook's possession are directly related to their objection to Debtor's exemptions.[3]

**2.** At this point, the Court makes no findings that Cook or his law firm was part to any fraud that may exist in or arose prior to this bankruptcy case. The actions with which this Court is concerned are solely those of Debtor. The documents First Union seeks to produce are documents that belong to Debtor and that Cook may merely physically possess such documents as a custodian for Debtor or for record keeping purposes.

**3.** First Union alleges that non-exempt assets were converted to exempt assets with the intent to hinder, delay or defraud creditors

First Union pleads that the requested documents are not protected by the attorney-client privilege because of the crime-fraud exception to that privilege and that the privilege was waived[4]. Debtor and Cook present various counter-arguments amounting to a position that no fraud was committed, there is no legal or factual basis for the crime-fraud exception, and there was no waiver. Cook also claims the Court has no personal jurisdiction over he or his firm and that Debtor owns the privilege, not Cook.

### CONCLUSIONS OF LAW

Bankruptcy Courts have jurisdiction over "all civil proceedings arising under Title 11, or arising in or related to cases under Title 11." 28 U.S.C. § 1334(b) (2000). Pursuant to 11 U.S.C. § 157(b), this Court may enter an order concerning production of documents in this case because it is a core proceeding arising in a case under Title 11.

■ The Court is called on to address applicability of, exception to, and waiver of the attorney-client privilege. Attorney-client privilege applies if:

(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*United States v. United Shoe Mach. Corp.,* 89 F.Supp. 357, 358–59 (D.Mass.1950). *See Federal Election Comm. v. Christian Coalition,* 178 F.R.D. 61, 66 (E.D.Va.1998); *Ray v. Cutter Laboratories,* 746 F.Supp. 86, 87 (M.D.Fla.1990).

### a. Crime-fraud exception.

■ There is a privilege protecting communications between attorney and client. The privilege takes flight if the relation is abused. A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law. He must let the truth be told.... To drive the privilege away, there must be "something to give colour to the charge"; there must be "prima facie evidence that it has some foundation in fact." When that evidence is supplied, the seal of secrecy is broken.

*Clark v. United States,* 289 U.S. 1, 15, 53 S.Ct. 465, 77 L.Ed. 993 (1933).

■ The Eleventh Circuit sets forth a two-part test to determine whether the crime-fraud exception applies to a communication between a lawyer and his client. *In re Grand Jury Investigation (Schroeder),* 842 F.2d 1223, 1226 (11th Cir.1987). *See Cox v. Administrator U.S. Steel & Carnegie,* 17 F.3d 1386, 1416 (11th Cir. 1994). To invoke the crime-fraud exception to the attorney client privilege, a party must first make "a prima facie evidence showing that the client was engaged in criminal or fraudulent conduct when he sought the advice of counsel, that he was planning such conduct when he sought the advice of counsel, or that he committed a crime or fraud subsequent to receiving the benefit of counsel's advice." *Schroeder,* 842 F.2d at 1226. The party must then show that "the attorney's assistance was obtained in furtherance of the criminal or

---

and are therefore not exempt under Fla. Stat. § 222.30 (West 2000). At this time, the Court makes no findings concerning Debtor's entitlement to exemptions.

4. The waiver argument is based on Cook's disclosure of invoices for legal fees to Debtor's accountant for tax purposes.

fraudulent activity or was closely related to it." *Id.*

■ There is a distinction between advice sought prior to a fraudulent undertaking and advice obtained after a fraud has been committed. *Warner,* 87 B.R. at 202. Advice obtained with respect to past crimes or misconduct, independent of guilt or innocence, is completely privileged. *Id.* However, advice sought in contemplation of commission, prior to commission, or during commission of a fraudulent undertaking is not privileged. *Id.* First Union seeks production of documents relating to Debtor's actions that were in contemplation of, prior to, or during the transfer of assets that is allegedly fraudulent and therefore not entitled to an absolute privilege.

■ "Prima facie", with respect to the crime-fraud exception, "means a showing, which if unrebutted, would result in a finding of fraud." *Warner,* 87 B.R. at 202 (citing *Koenig v. International Sys. and Controls Corp. (In re International Sys. and Controls Corp.),* 693 F.2d 1235, 1242 (5th Cir.1982)).

■ Prior to filing for bankruptcy, Debtor made various transfers with Cook and Cook's firm serving as Debtor's legal counsel. First Union alleges that through these transfers non-exempt assets were converted to exempt assets with the intent to hinder, delay or defraud First Union. If such intent is found, assets transferred may not be entitled to exempt status.

While the Court makes no findings as to Debtor's intent at this point, the Court does find that First Union raises sufficient inference that these transfers may have been fraudulent. Debtor's counsel presented argument in attempt to negate traditional badges of fraud. *See Warner,* 87 B.R. at 202–03. However, the Court finds First Union's factual showing sufficient to invoke the crime-fraud exception to the attorney-client privilege. Accordingly, First Union is entitled to production of documents that might evidence a fraudulent scheme.[5] However, First Union is not entitled to production of documents falling within the scope of the work product privilege as defined in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), or documents reflecting Cook's mental impressions, conclusions, opinions, or legal theories developed in connection with this case.

### b. Waiver.

■ Upon finding that the crime-fraud exception to the attorney-client privilege is satisfied, First Union's waiver argument becomes somewhat moot. However, the Court finds it appropriate to address this issue. First Union claims that the attorney-client privilege was waived by Cook's disclosure of information to Debtor's accountant for tax purposes.[6] Specifically, First Union pleads that Debtor "disclosed invoices from Cook relating to work he [Cook] had done on the transfer scheme to his accountant ... for a determination of whether their payment could be taken as expenses for income tax purposes."[7] (Doc. 102.) First Union claims this disclosure results in possible waiver of the attorney-client privilege as to all documents related to the "transfer scheme". First Union also claims that Debtor's disclosure was intentional and not inadvertent.

**5.** Following procedures set forth in *Warner,* 87 B.R. at 203–04 and modified by a separate order entered in accordance with these Findings of Fact and Conclusions of Law, the Court will conduct an in camera inspection of requested documents.

**6.** "[N]o confidential accountant-client privilege exists under federal law, and no state-

created privilege has been recognized in federal cases." *Couch v. United States,* 409 U.S. 322, 334, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973).

**7.** First Union notes that Debtor's accountant previously produced these invoices to First Union.

 

The great weight of authority holds that the attorney-client privilege is waived when a litigant places information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party.

*Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir.1989). *See Cox*, 17 F.3d at 1417–18. Debtor's disclosure of invoices for fees associated with legal advice to his accountant does not arise to placing information "in issue". Accordingly, the Court finds Debtor's disclosure of invoices insufficient to constitute a waiver of the attorney-client privilege.

**c. Jurisdiction.**

 Cook claims that this Court has no personal jurisdiction over his firm and cites *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) to support his position.[8] The Court notes that personal jurisdiction and "control" of documents are related, but not identical issues. *See Afros° S.P.A. v. Krauss–Maffei Corp.*, 113 F.R.D. 127, 129 (D.Del.1986). Lack of jurisdiction over a non-party does not necessarily mean that documents in that non-party's possession are shielded from discovery. Cook controls documents of interest to Debtor, a party before the Court. Debtor's interest in the documents at issue is a sufficient basis to compel production.

## *CONCLUSION*

The Court finds that the crime-fraud exception to the attorney-client privilege applies in this case. However, the Court does not find that Debtor waived the attorney-client privilege. A separate order will be entered in accordance with these findings of fact and conclusions of law.

---

8. First Union rebutted Cook's position by noting Cook's direct involvement in this bankruptcy case. On March 29, 1999 Debtor filed an Application for Order Authorizing Employment of Gary S. Cook as Attorney for Special Purposes. (Doc. 34.) On that same day, the Court entered an Order Authorizing Debtor-in-Possession to Employ Gary S. Cook as Attorney for Special Purpose. (Doc. 35.)