David H. ANDREWS, et al., Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 1:97 CV 3169.

United States District Court, N.D. Ohio, Eastern Division.

Feb. 24, 1999.

Rosalind Vivian Taylor, Shaker Heights, OH, for plaintiffs. ·

Rosalind V. Taylor, Cleveland, OH, pro se.

Alex E. Sadler, Tax Division, Department of Justice, Washington, DC, Kathleen L. Midian, Office of the U.S. Attorney, Cleveland, OH, for defendant.

***Memorandum of Opinion and Order***

GAUGHAN, District Judge.

### Introduction

This matter is before the Court upon defendant's Motion for Summary Judgment (Doc. 12). This case arises out of the placement of a lien on a piece of property in Shaker Heights by the Internal Revenue Service as a result of federal income tax liability entered against plaintiff Rosalind Taylor. For the following reasons, the Motion is GRANTED.

### Facts

Plaintiffs, Rosalind V. Taylor, *pro se* and as attorney for the other plaintiffs [1], David H. Andrews and Eloise J. Taylor, filed this Complaint and Complaint to Quiet Title against defendant United States of America.

Plaintiff Rosalind Taylor married Bernard Thompkins in 1989. For taxable years 1989 and 1990, Rosalind Taylor and Bernard Thompkins filed joint income tax returns. In 1989, Rosalind Taylor and Thompkins purchased the property which is at issue here, a colonial located in Shaker Heights, Ohio. (Rosalind Taylor depo. at 79–80). The couple paid $125,000 for the property, financing $75,000 and withdrawing $50,000 from a joint Merrill Lynch account. The $50,000 was Thompkins' separate property. (*Id.* at 81–82). The two were divorced in 1993. (Rosalind Taylor depo. at 8). In settlement of the divorce, Rosalind Taylor was awarded this property and Thompkins conveyed his interest to her on May 10, 1994. (*Id.* at 85, deft. Ex. O).

In July 1993, the Internal Revenue Service (hereafter, IRS) issued a notice to Rosalind Thompkins (Taylor) advising her of an income tax deficiency for taxable

---

1. Plaintiff Rosalind Taylor is an attorney.

year 1989 of $28,506, including penalties. In February 1994, the Internal Revenue Service issued notice to Rosalind Thompkins (Taylor) advising her of an income tax deficiency for taxable year 1990 of $14,524, including penalties. (deft. Exs. E and F).

In December 1993 and May 1994, respectively, Rosalind Taylor filed Petitions in the United States Tax Court challenging the tax deficiencies as set forth in the notices. Ms. Taylor contested the deficiencies and penalties stating that her former husband, Bernard Thompkins, had defrauded her of her income in 1989 by removing her funds from the Merrill Lynch account, referenced above, without her knowledge and that he had altered the tax returns after she had signed them for the years in question. She stated that her former husband was under criminal investigation for his dealing with HUD funds (deft. Ex. G and H).

Ultimately, decisions were entered in United States Tax Court that Rosalind Taylor owed the amounts due for the deficiencies. In September 1994, Rosalind Taylor signed a stipulation as to her income tax deficiency for the taxable year 1989 of over $22,000, including penalties, in the United States Tax Court. As to taxable year 1990, the United States Tax Court entered an order in June 1995 for liability of over $14,000 in income tax and penalties, as a result of Ms. Taylor's failure to appear for trial. (deft. Exs. I and J). Ms. Taylor did not litigate the innocent spouse argument in the United States Tax Court. (Rosalind Taylor depo. at 46–47).

Beginning in 1991, Rosalind Taylor's mother, plaintiff Eloise Taylor, a resident of California, began making the monthly mortgage payments on the property at issue here because Rosalind Taylor was unable to do so. (Eloise Taylor depo. at 27, Eloise Taylor affidavit).[2] Eloise Taylor also sent her daughter money to support her daughter's three children. Mrs. Taylor sent her daughter around $70,000. (Eloise Taylor depo. at 19, Eloise Taylor affidavit). She intended that she be reimbursed by her daughter. (*Id.*) Eloise Taylor understood the money she gave her daughter to be a loan for which she would be repaid. (Eloise Taylor depo. at 19, 23 and 51). Rosalind Taylor testified that she had an oral understanding with her mother that she would pay her back. (Rosalind Taylor depo. at 127).

On the same day the subject property was conveyed to her by her former husband in 1994 and after the IRS notices, Rosalind Taylor conveyed the property to her son, plaintiff David Andrews. (deft. Ex. P, Rosalind Taylor depo. at 86). David Andrews did not execute a contract for the sale and purchase of the property. Nor was he present when the deed was executed, but was out of the state. (Rosalind Taylor depo. at 87, 95). Rosalind Taylor testified, "I conveyed the legal title to my son so that they [David Andrews and Rosalind Taylor] could be assured of getting their cash payments back from the house. I had nothing else of value to secure what they had given me. There was no other way I could repay them for what they had done." (*Id.* at 91).

David Andrews did not assume the mortgage on the property which remained in Rosalind Taylor's name. (*Id.* at 109). In consideration of the transfer, Mr. Andrews, a resident of Hong Kong, agreed to pay expenses to keep the property from foreclosure and to maintain it in good re-

---

**2.** As discussed below, Rosalind Taylor eventually transferred the property to her son, David Andrews. Eloise Taylor, avers that at the time of the transfer, she had paid "approximately $70,000 in direct payments to the mortgage company, to keep the property from foreclosure and in maintenance cost to keep the property in good repair and for living expenses for [Rosalind Taylor] and three minor grandchildren." (Eloise Taylor affidavit). It appears from Eloise Taylor's deposition testimony that she completely emptied her bank account in assisting her daughter. (Eloise Taylor depo. at 19). Eloise Taylor, who is a retired school teacher, testified that she told Rosalind Taylor, "I want my money back because I would like to enjoy it myself." (*Id.*)

pair. To date, that amount is $18,000. (David Andrews affidavit). The $18,000 was paid after the 1994 conveyance date in the form of four checks in 1995, 1996 and 1997. (Rosalind Taylor depo. at 96, deft. Ex. R). Rosalind Taylor testified as to the nature of the money from her son: Q: Does he expect repayment of the $18,000 that he did pay in consideration for the property? A: Certainly. Q: He expects you to repay him—A: The property will repay him. I don't have to. (Rosalind Taylor depo. at 98). The Cuyahoga County Auditor valued the subject property at $135,200 for taxable year 1994. (deft.Ex. Q).

Eloise Taylor averred that she agreed to the transfer of title to David Andrews because of her age and health and understood that he would protect her interest in the property until it could be sold. (Eloise Taylor affidavit). David Andrews averred that his grandmother "requested that the real estate remain solely in [his] name for the reason that she was 80 years old, not in good health and did not want the property to be tied up in probate proceedings should she die before the property could be sold." (David Andrews affidavit).

After the 1994 conveyance and until 1997, Rosalind Taylor lived at the property with her three daughters. They did not pay rent to David Andrews. (Rosalind Taylor depo. at 8, 112). In 1997, Rosalind Taylor moved from the property and rents it to a tenant. (*Id.* at 6 and 9).

Rosalind Taylor first spoke to an IRS revenue agent in 1993. Rosalind Taylor feared the IRS would find her "liable for everything" rather than her former husband. Rosalind Taylor expressed her fear to the agent, Kathy Bijak, that she would lose her house. (*Id.* at 67–72). In 1995, IRS revenue officer John Jamieson visited Rosalind Taylor in the course of a field call at the subject property. Ms. Taylor advised Jamieson that she was insolvent. She further told Jamieson that she had transferred the house to her son, David Andrews, three years prior. (John Jamieson depo. at 5–8, 18). In fact, plaintiff had

only transferred the house a year earlier. Jamieson was thereafter transferred to another unit of the IRS. (*Id.* at 10).

IRS revenue officer Marcia Pennington was assigned to Rosalind Taylor's account in 1996. In August 1996, she recorded a Notice of Federal Tax Lien against Rosalind Taylor for the unpaid assessment for the two taxable years referenced above. (Marcia Pennington depo. at 8, deft. Ex. U). Ms. Pennington also issued a bank levy on three accounts, two of which were owned by Rosalind Taylor and one owned jointly by Taylor and her minor daughter. (Pennington depo. at 10). After Ms. Pennington learned that the one account was joint; she released the levy as to that account. (*Id.* at 110).

In March 1997, after Pennington learned that Rosalind Taylor intended to sell the subject property, she placed a "nominee lien" (i.e., Notice of Federal Tax Lien) against David Andrews covering the subject property for the purpose of protecting the Government's interest. (*Id.* at 28, 39, deft. Ex. V).

In December 1997, this Complaint was filed. The Complaint sets forth three causes of action. Count One is entitled "quiet title action" and seeks to set aside the "nominee lien." Plaintiffs assert that the Shaker Heights property was transferred to David Andrews for good consideration. Count Two is entitled "equity interest of plaintiff Eloise Taylor." Count Three is not titled and generally avers as to the nature of Rosalind Taylor's tax liability as well as the transfer of the subject property. The demand seeks an adjudication that David Andrews is the fee simple owner of the subject property, that Eloise Taylor has an equity interest and that defendant has no interest in it. Further, it is requested that the Notices of Federal Tax Liens be canceled, that defendant reevaluate the tax assessment it claims is due from Rosalind Taylor for the years 1989 and 1990 and that defendant be enjoined from further unfair tax collection practices.

Defendant filed a Counterclaim seeking to set aside the May 1994 conveyance of the subject property from Rosalind Taylor to David Andrews as fraudulent and to foreclose the liens against Rosalind Taylor's interest therein arising from the assessments against her for unpaid federal income taxes for the years 1989 and 1990.

Defendant thereafter filed the Motion for Summary Judgment now pending before this Court.

### Standard of Review

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing Fed.R.Civ.P. 56(c)); *see also LaPointe v. UAW, Local 600,* 8 F.3d 376, 378 (6th Cir.1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex,* 477 U.S. at 323, 106 S.Ct. 2548 (citing Fed.R.Civ.P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. Federal Rule of Civil Procedure 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is genuine issue for trial. If he does not respond, summary judgment, if appropriate, shall be entered against him.

The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dep't. of Transp.,* 53 F.3d 146, 150 (6th Cir.1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th Cir.1985). However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox,* 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.,* 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548). Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis,* 57 F.3d 476, 479 (6th Cir.1995) (quoting *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citation omitted).

### Discussion

Defendant and Counterclaimant seeks summary judgment (1) setting aside the May 1994 conveyance of the subject property as fraudulent and null and void, (2) foreclosing the federal tax liens on the subject property, (3) determining that the nominee lien against the subject property was proper, (4) determining that to the extent Eloise Taylor has an equitable interest in the subject property, it is subordinate to the federal tax liens and (5) determining that there is no basis to enjoin the IRS from attempting to collect Rosalind Taylor's lawfully assessed federal tax liabilities.

Plaintiffs assert that in this proceeding they seek to have this Court (1) recognize David Andrews as fee simple owner of the subject property and to recognize him as the trustee of the equity interest of Eloise Taylor, (2) remove the nominee lien on the subject property, (3) refund all payments Rosalind Taylor has made on the 1989 and 1990 tax assessments and (4) relieve Rosalind Taylor of tax liability for the years 1989 and 1990 under the expanded protection of the Internal Revenue Service Restructuring and Reform Act.

As an initial matter, defendant generally argues that Rosalind Taylor is liable for the assessments referenced above for taxable years 1989 and 1990 and she cannot adjudicate them in this action for two reasons: (1) she cannot challenge the correctness of the deficiencies in this Court based on the innocent spouse argument because having had a full and fair opportunity to litigate that argument in the United States Tax Court, that court's decisions are res judicata and (2) even had Rosalind Taylor not challenged the deficiencies in United States Tax Court, this Court does not have jurisdiction because to bring a refund suit, a taxpayer must first pay the full amount of the tax deficiency and file a claim with the IRS. Rosalind Taylor has not done so.

In response, plaintiffs assert that the res judicata defense is not available to defendant because under the newly enacted innocent spouse statute of the Internal Revenue Code, 26 U.S.C. § 6015, Rosalind Taylor is eligible to now make an election to seek relief from errors on the returns which are attributable to her former spouse. Plaintiffs further argue that this Court does have jurisdiction to award plaintiffs relief.

In reply, the defendant states that based on the newly enacted innocent spouse law (which became effective in 1998), it has informed Rosalind Taylor that she may make the elections authorized by 26 U.S.C. § 6015 and it has provided her with the necessary documents to make the elections. Citing to 26 U.S.C. § 6015(e)(1)(A), defendant asserts that Ms. Taylor must make these elections with the IRS first and if the latter renders an unfavorable decision, she may petition to the United States Tax Court. Defendant asserts that once she ties her elections with the IRS, it will dismiss its Counterclaim without prejudice because collection activities relating to the disputed taxes would be enjoined. Defendant asserts that Ms. Taylor has indicated that she intends to make the elections but that the plaintiffs intend to continue their litigating position in this Court during the pendency of consideration of the elections by the IRS. This Court has received nothing further from plaintiffs to indicate otherwise. Thus, this Court assumes that Rosalind Taylor is proceeding under the new innocent spouse law to challenge her liability for the taxable years in question by filing an election with the IRS.

Finding that the res judicata argument no longer applies because Rosalind Taylor is now asserting an innocent spouse defense with the IRS, this Court must decide whether it has jurisdiction to redetermine Rosalind Taylor's tax liabilities. For the following reasons, it does not.

■ Defendant argues that this Court lacks subject matter jurisdiction to refund or abate the disputed taxes because the taxpayer must first bring a refund suit under 28 U.S.C. § 1346(a)(1). Defendant asserts that in order to invoke the district court's jurisdiction to adjudicate an income tax refund suit under this statute, the taxpayer must first fully pay the challenged tax and file a timely administrative claim with the IRS. *Martin v. Commissioner*, 753 F.2d 1358 (6th Cir.1985). Plaintiffs argue that this Court does have jurisdiction under 26 U.S.C. § 7422 and 26 U.S.C. § 6015(e)(1)(C). For the following reasons, this Court agrees with defendant that plaintiffs misinterpret these sections and, therefore, this Court does not have jurisdiction to reevaluate the tax assessments defendant claims are due it from Rosalind Taylor for the years 1989 and 1990 as requested by plaintiffs.

26 U.S.C. § 7422, the general provision regarding tax refund suits, sets forth the conditions precedent to filing such an action and states in pertinent part:

### § 7422 Civil actions for refund

**(a) No suit prior to filing claim for refund.**—No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive *or in any manner wrong-fully collected*, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

See also *Thomas v. United States,* 166 F.3d 825 (6th Cir.1999) (prerequisites to a refund suit in federal court.) Plaintiffs now assert that the newly enacted provision of the Internal Revenue Code which relates to the innocent spouse defense alters this jurisdictional prerequisite. Plaintiff's point to 26 U.S.C. § 6015(e)(1)(C) which provides:

**(e) Petition for review by Tax Court.—**

(1) **In general.**—In the case of an individual who elects to have subsection (b) or (c) apply—

**(C) Limitation on Tax Court jurisdiction.**—If *a suit for refund is begun* by either individual filing the joint return pursuant to section 6532—

(I) the Tax Court shall lose jurisdiction of the individual's action under this section to whatever extent jurisdiction is acquired by the district court or the United States Court of Federal Claims over the taxable years that are the subject of the suit for refund; and

(ii) the court acquiring jurisdiction shall have jurisdiction over the petition filed under this subsection.

Relying on this provision, plaintiffs argue that this Court has jurisdiction to award relief. However, § 6015(e)(1)(A) provides:

**(e) Petition for review by Tax Court.—**

(1) **In general.**—In the case of an individual who elects to have subsection (b) or (c) apply—

(A) **In general.**—The individual may petition the Tax Court (and the Tax Court shall have jurisdiction) to determine the appropriate relief available to the individual under this section if such petition is filed during the 90–day period beginning on the date on which the Secretary mails by certified or registered mail a notice to such individual of the Secretary's determination of relief available to the individual. Notwithstanding the preceding sentence, an individual may file such petition at any time after the date which is 6 months after the date such election is filed with the Secretary and before the close of such 90–day period.

Thus, an individual seeking to file an election under the innocent spouse statute must do so in the first instance with the Secretary of the IRS and then may appeal to the Tax Court. Plaintiffs' assertion that § 6015(e)(1)(C) completely obviates the jurisdictional requirements of § 6015(e)(1)(A) and § 7422 does not make sense. Rather, defendant asserts that § 6015(e)(1)(C) only means that the Tax Court cedes jurisdiction over a claim for innocent spouse relief to a district court that acquires jurisdiction over a refund suit with respect to the same tax years. This Court agrees. Accordingly, where a refund suit has already been *properly* filed with the district court for the same years in question, a new claim filed with the Secretary of the IRS asserting innocent spouse relief would be turned over to the district court to be heard with the refund suit. As a refund suit has not been properly filed herein, this Court is without

jurisdiction to reevaluate Rosalind Taylor's tax liability for the years 1989 and 1990.

Therefore, the Court proceeds to the remaining issues raised in this case.

Defendant asserts that Rosalind Taylor is the true owner of the subject property. Plaintiffs ask the Court to determine that David Andrews is the fee simple owner of the subject property and "trustee" of the equity interest of Eloise Taylor.

Defendant argues that Rosalind Taylor is the true owner and that the transfer to David Andrews was fraudulent. Defendant asserts that under Ohio's Uniform Fraudulent Transfer Act, Ohio Revised Code § 1336.04(A)(1) (which plaintiff does not dispute applies here), there is direct evidence of fraudulent intent on Rosalind Taylor's part as well as satisfaction of seven of the eleven factors, enumerated in the statute, which a court may consider in determining whether the debtor conveyed the property with fraudulent intent. Plaintiffs argue that the transfer was not fraudulent as evidenced by Rosalind Taylor's good faith in dealing with the IRS agents and the fact that only one of the enumerated factors has been satisfied.

▆ Ohio Revised Code § 1336.04(A)(1) provides:

**§ 1336.04 When transfer or obligation incurred is fraudulent as to a creditor.**

(A) A transfer · made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following ways:

(1) With actual intent to hinder, delay, or defraud any creditor of the debtor;

(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and if either of the following applies:

(a) The debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction;

(b) The debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

(B) In determining actual intent under division (A)(1) of this section, consideration may be given to all relevant factors, including, but not limited to, the following:

(1) Whether the transfer or obligation was to an insider;

(2) Whether the debtor retained possession or control of the property transferred after the transfer;

(3) Whether the transfer or obligation was disclosed or concealed;

(4) Whether before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit;

(5) Whether the transfer was of substantially all of the assets of the debtor;

(6) Whether the debtor absconded;

(7) Whether the debtor removed or concealed assets;

(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred;

(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

It is not disputed that a creditor's establishing a combination of the enumerated "badges of fraud" set forth in the statute gives rise to an inference or presumption which shifts the burden to the debtor to

establish that the conveyance was not fraudulent but made for a fair consideration. *Cardiovascular & Thoracic Surgery of Canton, Inc., v. DiMazzio*, 37 Ohio App.3d 162, 524 N.E.2d 915 (1987).

Defendant asserts that there is direct evidence of Rosalind Taylor's intent to defraud the United States. Defendant points to Rosalind Taylor's deposition testimony. While the testimony is not as clear as defendant represents it to be, Rosalind Taylor testified that because of her financial problems, which included her tax problems, she conveyed the property to her son to ensure that he and her mother were repaid for the expenses they had contributed to her. She was not able to afford the house herself because she was insolvent. But Rosalind Taylor wanted to continue living at the property, she did not want to move. She testified that she realized that the IRS could look to her home to satisfy her tax liabilities. (Rosalind Taylor depo. at 68, 91–94).

Defendant additionally argues that the following statutory factors have been satisfied as established by the evidence: the transfer was to an insider; Rosalind Taylor retained possession of the property after the transfer; before the transfer was made Rosalind Taylor knew of her tax liabilities; Rosalind Taylor acknowledged that the subject property represented substantially all of her assets; the value of the consideration received by the debtor was not reasonably equivalent to the value of the asset transferred (he paid no consideration because the evidence shows the $18,000 was a loan); Rosalind Taylor admitted she was insolvent when the transfer was made; and the transfer occurred shortly before the United States Tax Court determined her liability.

Plaintiffs assert that only one "badge of fraud" has been satisfied, i.e., David Andrews and Eloise Taylor are insiders. Rather, plaintiffs argue, the following badges of good faith have been shown. First, in 1993, when IRS agent Kathy Bijak audited Rosalind Taylor and her husband, Ms. Taylor fully cooperated with her. (Rosalind Taylor depo. at 67–68). Second, when revenue agent Jamieson visited Rosalind Taylor in 1995, she told Jamieson that Thompkins had taken the bulk of the couple's assets, she could not afford her home, she had transferred the house to David Andrews, Eloise Taylor had been paying the mortgage and other property expenses and David Andrews had contributed $15,000 to keep the house out of default. (Jamieson depo. at 8, 17–18). Third, plaintiffs assert that had they

> engaged in fraud, they would have transferred the property and sold it during the three year interval between the transfer, following the first conversation with auditor Cathy Bijak in 1993 or sometime during the inactivity from 1994 to 1996. Further, it would have been a simple matter to back date a trust agreement between David Andrews and [Eloise] Taylor. The plaintiffs never resorted to that questionable tactic because the warranty deed and ample consideration establish a legitimate conveyance of the homestead.

Fourth, plaintiffs assert that Rosalind Taylor had paid $3000 in July 1998 to stop a foreclosure.

Additionally, plaintiffs dispute defendant's asserted badges of fraud. As to the fact that Rosalind Taylor retained possession of the property, plaintiffs assert that David Andrews did place the home on the market in 1996 and 1997, even though Rosalind and the children did not want to move. They did move out in August 1997. Further, plaintiffs argue, no law mandates that the owner occupy the home. As to the fact that the property represented all of Rosalind Taylor's assets, plaintiffs assert that the house was actually in foreclosure several times before the transfer and, thus, was not a very valuable asset. As to the whether David Andrews paid adequate consideration, plaintiffs assert that the $88,000 from Eloise Taylor and David Andrews were not gifts or loans, but were consideration as evidenced by the deposition and affidavit testimony of plaintiffs.

As to whether the transfer occurred shortly before the Tax Court determined liability, plaintiffs assert that at the time of transfer the IRS had no judgment nor right against Rosalind Taylor.

Plaintiffs also argue that the defendant is estopped from asserting fraud because it did not make a timely claim inasmuch as the IRS knew the property had been transferred and yet placed a nominee lien on the property three years after the conveyance. Additionally, plaintiffs argue that under 28 U.S.C. § 3306 the government only has two years to avoid a transfer and, thus, defendant is out of time.

■ These arguments are rejected. First, estoppel does not apply to the United States unless "at the very minimum, some affirmative misconduct by the government agent is shown." *U.S. v. Guy*, 978 F.2d 934, 937 (6th Cir.1992). Such is absent here. Second, the statute plaintiffs rely on is not the Internal Revenue Code chapter and thus is inapplicable. Rather, the Internal Revenue Code § 6502(a) gives the United States 10 years from the date a tax is assessed to collect the taxes.

■ For the following reasons, this Court finds that the transfer of the property was fraudulent and plaintiffs have not met their burden in refuting this and, therefore, the nominee lien was valid.

As admitted by plaintiffs, the first factor of the statute has been satisfied, i.e., transfer to an insider. The second factor has also been satisfied. The evidence clearly shows that Rosalind Taylor retained possession of the house after the conveyance and did not move out until 1997 when she could no longer afford to stay. The tenant to whom she rents the house writes the monthly rent check to Rosalind Taylor, who then pays the mortgage on the property and any repairs. (Rosalind Taylor depo. at 9). David Andrews has lived out of the state since before the conveyance and only returns for yearly visits.

The fourth statutory factor has been satisfied. When the transfer was made in May 1994, Rosalind Taylor had received the two notices of tax deficiency (July 1993

and February 1994). Thus, although the United States Tax Court had not entered its final decisions, Rosalind Taylor had been effectively "threatened with suit" within the meaning of the statute. Further, at the time of transfer, Rosalind Taylor had filed one petition in the Tax Court; the second petition was signed four days after the transfer.

The fifth factor has been satisfied. Rosalind Taylor argues that she had been insolvent since her former husband absconded with her money in 1992. Thus, she asserts, she was not insolvent as a result of the property transfer but rather the insolvency pre-dated the transfer. Further, she asserts, the house had been in default three times before the transfer. (brief at 8). All of this only shows that the house was her only asset. Additionally, although the house had been in default, Rosalind Taylor obviously still considered it her only asset as she testified, "I conveyed the legal title to my son so that they [David Andrews and Rosalind Taylor] could be assured of getting their cash payments back from the house. I had nothing else of value to secure what they had given me. There was no other way I could repay them for what they had done." (*Id.* at 91).

The eighth factor has also been satisfied. Defendant has evidence that the market value of the house was $135,200. Plaintiffs submit nothing to refute this. Plaintiffs try to argue that $88,000 was received as consideration for the transfer—$18,000 from David Andrews and $70,000 from Eloise Taylor. First, David Andrews is the transferee and so only his consideration is relevant. David Andrews avers, "In consideration for the transfer, I agreed to pay expenses to keep the property from foreclosure and to maintain the property in good repair. To date that amount is $18,000." (David Andrews affidavit). However, his answers to the defendant's interrogatories seem to indicate that the money was not paid for consideration of the transfer, but as a loan. Mr. Andrews was

asked to describe what is meant by nominee and trustee of Eloise Taylor. He responded:

> [Eloise Taylor] is now 82 and of sound mind. However, I am trustee of her estate and nominee in her interest in the subject property. This was arranged because my grandmother had a triple by-pass surgery and felt she was too old to see to the disposition of the property. I was to insure that my three minor sisters were educated should anything happen to grandmother. I have done so by providing financial assistance to two of my sisters at college and attempting to sell the family home to reimburse the *debt owed to my grandmother and myself.*

(emphasis added, deft. Ex. S). Even assuming the $18,000 was paid strictly as consideration in exchange for transfer of the property, this could never be considered "reasonably equivalent" to the value of the home. Second, Eloise Taylor gave Rosalind $70,000. Eloise testified that she expected her daughter to repay her. Furthermore, her testimony was that the money was sent, in part, to support her grandchildren. This could not be considered consideration for the transfer of the property.

The ninth factor has been satisfied. Rosalind Taylor testified that she was insolvent both before and after the transfer.

The tenth factor has been satisfied. The transfer of the property occurred shortly after the notices of tax deficiency were issued and shortly before the United States Tax Court issued its first decision as to Rosalind Taylor's liability (October 1994).

In Rosalind Taylor's defense, the third, sixth, seventh and eleventh factors have not been satisfied. However, the others far outweigh. Defendant has satisfied its burden.

Plaintiffs' arguments that Rosalind Taylor was cooperative with the IRS agents and that she could have used other deceptive tactics are not persuasive and do not satisfy her burden of showing that the conveyance was made for fair consideration. Further, plaintiffs' arguments as to Eloise Taylor's equity interest do not change this determination. As shown earlier, Eloise lent the money to her daughter for the house and children. Moreover, plaintiffs have not defined what kind of "equity interest." Eloise Taylor is entitled to so as to obviate the validity of the nominee lien. Also, defendants have asserted that their first filed lien would have priority over an unrecorded interest. The Court agrees.

For the foregoing reasons, summary judgment is granted to defendant as the nominee lien was valid and this Court is without jurisdiction to redetermine Rosalind Taylor's tax liability. The court does not reach the issue of the Counterclaim as defendant has indicated it will dismiss it upon Rosalind Taylor's filing of an election with the IRS asserting the innocent spouse defense.

### Conclusion

For the foregoing reasons, defendant's Motion for Summary Judgment is granted.

IT IS SO ORDERED.