In re James F. McGUIRL and Marlene C. McGuirl, Debtors.

William Douglas WHITE, Trustee, Plaintiff,

v.

Stella LUNDBY, et al., Defendants.

Bankruptcy Nos. 90–00141, 90–00142. Civ. A. No. 92–2458 (JLG).

United States District Court, District of Columbia.

Aug. 23, 1993.

Memorandum on Reconsideration Nov. 24, 1993.

William Douglas White, Kevin R. McCarthy, Lepon, McCarthy, Jutkowitz & Holzworth, Washington, DC, for plaintiff.

John J. Cullen, Cullen & Wood, San Francisco, CA, for Stella Lundby.

Courts Oulahan, Washington, DC, for James F. McGuirl.

Nelson Kline, Washington, DC.

## MEMORANDUM

JUNE L. GREEN, District Judge.

This matter comes before the Court upon the Trustee William D. White's motion for summary judgment filed May 28, 1993. The

defendants Stella Lundby and James McGuirl separately oppose the motion and request that the Court strike the exhibits appended to the Trustee's motion under Rule 56(e).

## I. Defendants' Motions to Strike Exhibits

The defendants ask the Court to strike plaintiff's summary judgment motion exhibits A through G and exhibit K. They argue that the affidavits in Exhibit K must be stricken pursuant to Rule 56(e) because they were not made on personal knowledge and do not show that the affiants are competent to testify to the matters stated in the affidavits. The Court does not see any merit to this challenge. The affiants state that they have personal knowledge of the matters to which they testify and in the Court's opinion are competent for the testimony provided. Moreover, defendants have presented no evidence to the contrary.

The Court is also not persuaded by the defendants' contentions that the documents presented in exhibits A through G are inadmissible for lack of authenticity. Plaintiff has presented business records declarations to substantiate the authenticity of the documents contained in the exhibits which meet the requirements of Rule 901 of the Federal Rules of Evidence. Accordingly the Court shall deny the defendants' motions to strike.

## II. Plaintiff's Motion For Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Once the moving party presents evidence which, if uncontroverted, would entitle the movant to summary judgment, the burden shifts to the nonmoving party to come forward with specific material facts demonstrating that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–249, 106 S.Ct. 2505, 2509, 2511, 91 L.Ed.2d 202 (1986).

The Supreme Court in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) explained the meaning of "genuine issues of material fact" which would preclude the entry of summary judgment:

By its very terms, [the Rule 56] standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. (Emphasis in original).

As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.... [S]ummary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

*Anderson v. Liberty Lobby, Inc., supra* at 247–248, 106 S.Ct. at 2510.

In deciding a motion for summary judgment, the material before the Court "must be viewed in the light most favorable to the [nonmoving] party." *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Finally, summary judgment is not a disfavored procedural shortcut, but an important part of the Federal Rules "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex Corporation v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

### FACTS

For purposes of this motion the Court finds the following uncontroverted facts:

1. The debtor, James McGuirl and his mother, Mrs. Lundby, during most of the 1980's held the following property in their joint names:

(a) certificates of deposit and savings account with Bank of America, Imperial

Federal Savings Association, and Great Western Bank;

(b) shares of stock in Pacific Gas & Electric held by Dean Witter Reynolds;

(c) mutual fund shares in Dean Witter Reynolds U.S. Government Trust Fund; and

(d) mutual fund shares in Putnam High Income Government Trust held by Dean Witter Reynolds.

These investments and funds shall be referred to collectively as the "Property."

2. With the agreement of Mrs. Lundby and at her direction, Mr. McGuirl reported all of the interest and dividends from the Property on his tax returns.

3. When asked by the Internal Revenue Service why income from the Property had not been reported on her tax returns, Mrs. Lundby informed the IRS that her son, Mr. McGuirl had reported it on his tax returns.

4. During 1989, Mr. McGuirl either borrowed or renewed credit from numerous financial institutions, including borrowing $100,000 from Mellon Bank (MD); $100,000 from Bank 2000; $150,000 from Columbia Bank, and $50,000 from First American Bank, N.A.

5. In order to obtain the loans, Mr. McGuirl presented the financial institutions with his personal financial statements which listed the Property together with all of his other assets. He also submitted his tax returns listing interest and dividends from the Property.

6. The lenders relied upon the truth of the financial statements and tax returns in extending credit to Mr. McGuirl. Officers of several of the institutions which loaned money to Mr. McGuirl[1] averred that they would not have made the loans had they known that Mr. McGuirl would later disavow his ownership of the Property.

7. In the latter part of 1989 and early 1990, Mr. McGuirl was in serious financial difficulty with many of his creditors demanding full payment on their loans. During this period of time Mr. McGuirl and Mrs. Lundby removed Mr. McGuirl's name from all of the Property so that the Property was held in Mrs. Lundby's name only.

8. On March 2, 1990, an involuntary bankruptcy petition was filed against Mr. McGuirl and his wife, Marlene McGuirl, resulting in the entry of an Order for Relief on March 27, 1990.

## DISCUSSION

Section 548(a) of Title 11 of the United States Code provides that the bankruptcy trustee may "avoid any transfer of an interest of the debtor in property" that was made within one year previous to the filing of the bankruptcy petition if the debtor

made such transfer ... with actual intent to hinder, delay or defraud any entity to which the debtor was or became [indebted] on or after the date that such transfer was made....

11 U.S.C. 548(a)(1).

The defendants argue that summary judgment must be denied on the issue of whether Mr. McGuirl fraudulently transferred the Property to Mrs. Lundby because the Court cannot determine as a matter of law that Mr. McGuirl owned any "interest" in the Property, or that he transferred such property with "actual intent" to defraud his creditors.

With regard to Mr. McGuirl's ownership interest in the Property, the defendants argue variously that (1) the fact that Mr. McGuirl's name appeared on the Property accounts is not conclusive of his ownership; (2) Mrs. Lundby never legally made a gift of the Property to Mr. McGuirl; and (3) Mrs. Lundby and Mr. McGuirl orally agreed at the time that Mr. McGuirl's name and social security numbers were placed on the accounts that he would not hold any interest in the Property or the ability to use it for his own purposes.

These arguments are immaterial to the equitable basis upon which Mr. McGuirl may be found to own the Property and the basis upon which Mrs. Lundby is precluded from denying such ownership. The uncontroverted facts demonstrate that Mr. McGuirl held himself out to the Internal Revenue Service

1. First Liberty National Bank, Columbia Bank, and Bank 2000.

and to his creditors as the owner of the Property and that Mrs. Lundby knowingly and intentionally supported and facilitated these actions. She regularly instructed him to report the income from the Property on his tax returns.

The doctrine of estoppel provides that where the owner of property has allowed another to appear as the owner, or as having full power to dispose of the property so that an innocent person is led into dealing with the apparent owner, the true owner is estopped to deny that the apparent owner did not have title to the property. *In re Pubs, Inc. Of Champaign*, 618 F.2d 432, 439 (7th Cir.1980).

The Court finds that Mrs. Lundby is estopped to deny Mr. McGuirl's ownership of the Property given the undisputed facts presented here. Mrs. Lundby instructed Mr. McGuirl to report the income and dividends from the Property on his tax returns. This was done for the self evident purpose of obtaining more favorable tax treatment of the Property. There can be no other reason. She intended to derive benefits from having Mr. McGuirl claim the Property as his own.[2] Yet, Mrs. Lundby now claims that there was a clear understanding between her and her son that the Property belonged to her. This amounts to a false representation, or at least conduct which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which she now attempts to assert. *Parker v. Sager*, 174 F.2d 657, 661 (1949). Mrs. Lundby is thus estopped, as a matter of law, from denying Mr. McGuirl's ownership of the Property.

As to the parties claiming the estoppel,[3] Mr. McGuirl's creditors, including the IRS, justifiably relied upon the truth of the representations made upon his tax returns and in his personal financial statements. The defendants argue that the lenders' reliance on the financial statements was not reasonable because the Property constituted less than five percent (5%) of the assets reported on those statements. The defendants further argue that it is incredible that the lenders could have been prejudiced by a 5% error in Mr. McGuirl's statement of assets. The Trustee responds that although the Property was only about five percent of Mr. McGuirl's total assets, it represented nearly half of his liquidity.

Notwithstanding these arguments, the Court must evaluate the question of reliance based upon the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" to determine issues of material fact. The Trustee's motion contains the affidavits of bank officers from three financial institutions which loaned the debtor money. Each officer states that the officer relied upon the debtor's financial statements and would not have extended credit but for the presence of the Property amongst the other assets listed on the statements. Defendant McGuirl disputes the reasonableness of their reliance. However, in Paragraph 16 of his affidavit, dated June 20, 1993, Mr. McGuirl concedes the following:

> During the 1980's I was aware that I had an ownership interest in the subject matter property. I assumed literally that I was a joint tenant, whatever that term would mean based upon proper legal interpretation. I listed these properties on my personal financial statements with all other properties in which I had an interest.

Thus, there was nothing on his personal financial statements to distinguish the Property from all other properties in which he had an interest. He states, however, that he would tell any lender who asked him about the Property that Mrs. Lundby "controlled" it:

> Whenever, asked by one extending credit, I would advise that the property was under the control of my mother and could not be used as collateral or moved from Cali-

---

**2.** This is also reflected in Mr. McGuirl's affidavit, dated July 1, 1993, in which he states: "That during the 1980's my mother was concerned about the tax burdens on her and whether or not she would have enough money on which to survive and I agreed to include the income and dividends on my tax returns."

**3.** The trustee stands in the shoes of the Internal Revenue Service and the creditors for the purposes of this adversary proceeding. 11 U.S.C. § 544.

fornia to the east in order to establish a deposit account here. This always proved to be a satisfactory answer, and if a credit relationship was to be established, such relationship had to be established without any involvement with this property. Declaration of James F. McGuirl, *supra*, at ¶ 16. At oral argument, when questioned by the Court on these averments, Mr. McGuirl could recall only one instance in which a bank officer asked him specifically about the Property accounts.[4] Even taking these representations as true for the purposes of this motion, they do not controvert the affidavit representations made by the officers from First Liberty National. Bank, Columbia Bank, and Bank 2000 that they relied upon Mr. McGuirl's financial statements and tax returns in extending him credit. Thus, the Court accepts the representations of the bank officers as uncontroverted.

■ With regard to the "intent" element of the Trustee's claim, the defendants mistakenly assert that fraudulent intent is always a question for the trier of fact and that summary judgment must be denied on this basis. Where the facts material to the question of intent are not in dispute, the Court may determine the issue of fraudulent intent as a matter of law. *Jackson v. Star Sprinkler Corp.*, 575 F.2d 1223, 1231 (8th Cir. 1978).

■ In the case at bar, the material undisputed facts compel the conclusion that the transfer was made with fraudulent intent. Mr. McGuirl was in desperate financial circumstances during the time the transfers were made. He was receiving demand letters from his creditors to pay his loans in full. For example, in November 1989, almost contemporaneous with the first transfers of property from Mr. McGuirl to Mrs. Lundby, the Bank of New York demanded by letter payment in full of the outstanding loan principal of $300,000 plus fifteen thousand dollars of interest. At a time when Mr. McGuirl clearly needed funds to satisfy his debts he was nevertheless transferring funds to his mother.

Fraudulent intent is rarely proved by direct evidence and this case contains many of the so-called circumstantial badges of fraud: a transfer between members of a family, for no consideration, at or near the time of the debtor's insolvency. *Eyler v. Commissioner*, 760 F.2d 1129, 1132 (11th Cir.1985); *In re Warner*, 87 B.R. 199 (Bankr.M.D.Fla.1988). Moreover, Mr. McGuirl concedes in his July 1, 1993 Affidavit that it was concern over his financial difficulties which precipitated the removal of his name by his mother from the Property accounts.[5]

The defendants have argued in their papers and at the motion hearing held on August 16, 1993 that the facts demonstrate that the Property was owned by Mrs. Lundby alone and that Mr. McGuirl held bare legal title. His name, they argue, was put on the accounts for "convenience" only, to enable him to have access to the funds in the event of Mrs. Lundby's incapacity or death. However, as the Court has already shown, those facts, even if true, are immaterial to the fact that others relied upon tax returns and financial statements. The tax returns enabled Mr. McGuirl to credibly represent upon his financial statements that he owned the Property. Mrs. Lundby intentionally facilitated these events and must bear the equitable consequences of her actions.

For these reasons, the Trustee's motion for summary judgment is GRANTED. An appropriate Order accompanies this Memorandum.

### ORDER

Upon consideration of the Plaintiff's Motion for Summary Judgment filed on May 28,

---

4. This instance is also recounted in ¶ 16 of Mr. McGuirl's June 20, 1993 affidavit, as follows: "The most vivid recollection of discussions of this property with a lender was with Mr. Allen Disman, Second, Vice President, Private Banking, Bank Leumi Trust Co. of New York. Mr. Disman suggested that perhaps monies represented by certificates of deposit in California could be moved to Bank Leumi in New York. The situation was explained to him and he agreed that this was not possible."

5. "In 1989, I mentioned to my mother that I was having some financial problems but never mentioned to her the specifics of the financial problems. It was her idea to remove my name from her accounts." Declaration of James McGuirl, dated July 1, 1993, at page 3.

1993, as well as the defendants' motions to strike plaintiff's summary judgment exhibits; all memoranda and exhibits filed in support and opposition thereto, the arguments of counsel at the hearing held on August 16, 1993, the entire record of the case, and for the reasons stated in the accompanying Memorandum, it is by the Court this 23d day of August 1993

**ORDERED** that defendants' motions to strike plaintiff's summary judgment exhibits are DENIED; it is further

**ORDERED** that Plaintiff's Motion for Summary Judgment filed on May 28, 1993 is GRANTED as further provided; it is further

**ORDERED** that the transfers identified in Counts 1 through 7 of the Complaint be set aside and that the property identified in Counts 1 through 7 of the Complaint and any proceeds or income therefrom (collectively the "Property") be, and hereby are, the property of the Trustee in bankruptcy; it is further

**ORDERED** that the defendants deliver the Property forthwith to the Trustee.

## MEMORANDUM ON RECONSIDERATION

Before the Court are two motions filed by the defendants: a motion to reconsider the Court's ruling on August 23, 1993 granting the Trustee's motion for summary judgment and a motion to stay proceedings to enforce the judgment pending resolution of the motion to reconsider or any further appeal.[1] For the reasons set forth here, the Court shall deny the defendants' motion to reconsider and grant, in part, the defendants' motion to stay.

### Motion To Reconsider

The defendants Stella Lundby and James McGuirl ask the Court to reconsider its August 23, 1993 Order granting summary judg-

ment to the Trustee and ordering that the funds alleged in the Complaint to have been fraudulently conveyed be turned over forthwith to the Trustee. In the instant motion the defendants argue for the second time that no estoppel arose to prevent Mrs. Lundby from denying that Mr. McGuirl owned an interest in the subject Property. Citing California law, they set forth the following requirements for finding an estoppel:

> [T]here must be (a) a representation or concealment of material facts (b) made with knowledge, actual or virtual, of the facts (c) to a party ignorant, actually and permissibly, of the truth (d) with the intention, actual or virtual, that the latter act upon it; and (e) the party must have been induced to act upon it.

Def.'s Mem., p. 4, quoting from 11 Witkin, Summary of California Law 9th ed., Equity, Section 177, p. 859. Based upon this standard, defendants reassert that Mrs. Lundby made no representation or concealment of a material fact to any of Mr. McGuirl's creditors and that none of his creditors relied upon any statement or conduct of Mrs. Lundby.

This assertion is invalid. It is undisputed that Mrs. Lundby directed Mr. McGuirl to claim the Property on his tax returns. *See* Memorandum and Order, August 23, 1993, p. 4. These directions constitute conduct upon which the IRS relied. Furthermore, Mrs. Lundby admits that she did not claim the Property on her own tax returns. When questioned by the IRS as to why such Property was not reported by her she indicated that it was because her son was reporting it. *Id.* These statements and conduct had no other effect than to lead the IRS to believe that Mr. McGuirl owned the Property. Mrs. Lundby cannot now assert the contrary.[2]

---

1. The defendants' "Petition For Reconsideration" was filed on September 3, 1993. On September 24, 1993, the defendants filed separate motions for a stay.

2. Defendants did not directly address in their argument the reliance upon Mrs. Lundby's conduct and statements by the IRS. They instead focused upon the many banks which loaned money to Mr. McGuirl and argued that such

creditors could not have relied upon Mrs. Lundby's conduct or statements because they had no contact with her. It is enough, however, that the Property was fraudulently transferred as to one creditor, the IRS, for such Property to be recovered for the benefit of all the creditors in the Bankruptcy estate. *Moore v. Bay,* 284 U.S. 4, 4–5, 52 S.Ct. 3, 3, 76 L.Ed. 133 (1931).

### Motion To Stay

On September 30, 1993 the Court heard argument on the defendants' motion to stay and without ruling on the motion ordered the parties to provide the Court with further information relating to Mrs. Lundby's financial status, as well as the extent to which the Trustee has recovered the Property fraudulently transferred. The parties have submitted reports pursuant to the Court's Order. Based upon the Court's review of the reports, the Court shall grant a limited stay in the enforcement of the August 23, 1993 judgment.

█ Some of the funds covered by the Court's summary judgment ruling have been withheld by financial institutions apparently unsure as to whether they must release such funds to the Trustee. Thus, Dean Witter has withheld funds amounting to approximately $57,318.00 in a U.S. Government Trust account. The Court finds that Dean Witter has no basis upon which to withhold such funds from the Trustee.

In addition, Great Western Bank has placed a hold on funds amounting to $90,352.87 contained in account # 068–640650–5.

As a result of the hold on the Great Western account, as well as the transfer of other funds to the Trustee pursuant to the summary judgment ruling, Mrs. Lundby's financial resources have been greatly constrained. The Court is informed that she has had difficulty paying the bill at the nursing home that is caring for her. Additionally, a temporary conservator has been appointed for Mrs. Lundby.

The Court finds that Great Western Bank account # 068–640650–5 was opened on June 30, 1992 with separate deposits of $20,000.00 and $84,352.87. These amounts came from different sources. The $20,000 deposit originated from Great Western Bank account # 068–025243–1. Account # 068–025243–1 was opened on December 14, 1991, with funds that came from account # 068–638434–8, closed on the same date. This latter account contained the funds fraudulently transferred by Defendant McGuirl to Defendant Lundby. Thus, the Court finds that the Trustee shall be entitled to recover $20,000 from account # 068–640650–5.

The remaining funds in account # 068–640650–5, approximately $70,352.87, originate from the deposit of $84,352.87 representing the proceeds of the sale of Mrs. Lundby's home in 1992. These funds were not fraudulently transferred by the defendant McGuirl and are not described in the Complaint. A substantial issue is raised as to whether the Trustee would be entitled to recover any portion of this amount should the Trustee not recover all the funds described in the Complaint and covered by the Court's August 23, 1993 summary judgment ruling. In addition, the Court finds that Mrs. Lundby will suffer irreparable and serious harm at this time if she is not able to continue her care at the nursing home. Without access to the funds at Great Western Bank, Mrs. Lundby's ability to maintain the level of care she has been receiving is questionable.

Accordingly, the Court shall grant a limited stay in the enforcement of the August 23, 1993 summary judgment ruling only to permit Mrs. Lundby's conservator access to account # 068–640650–5 and to funds amounting to the sum of $70,352.87. The Court shall restrict any use of such funds to the purpose of Mrs. Lundby's care at the nursing home. These funds may also be put to the costs of setting up the conservatorship, but shall not be used to pay any other legal fees incurred by Mrs. Lundby. The stay granted by the Court shall remain in effect pending the outcome of the defendants' intended appeal of this Court's summary judgment ruling. In all other respects, the defendants' motion for a stay is denied.

An appropriate Order accompanies this Memorandum.

### ORDER

Upon consideration of the defendants' motion to reconsider filed September 3, 1993, the defendants' motions to stay filed on September 24, 1993, all memoranda filed in support and in opposition, the reports submitted to the Court pursuant to its October 7, 1993 Order, the arguments of counsel at the hearing on September 30, 1993, the entire record of the case and for the reasons set forth in

the accompanying Memorandum of this date, it is by the Court this 24th day of November 1993

ORDERED that the defendants' motion to reconsider is DENIED; it is further

ORDERED that the defendants' motion to stay is GRANTED IN PART and DENIED IN PART as further provided; it is further

ORDERED that the Court grants a limited stay in the enforcement of the August 23, 1993 summary judgment ruling only to permit Mrs. Lundby's conservator to gain access to Great Western Bank account # 068–640650–5 and to the funds contained therein to the extent of the sum of $70,352.87. The Court restricts the use of such funds to the purpose of Mrs. Lundby's care at the nursing home. The funds may also be put to the costs of establishing the conservatorship, but shall not be used to pay any other legal fees incurred by Mrs. Lundby; it is further

ORDERED that the limited stay granted herein by the Court shall remain in effect pending the outcome of the defendants' intended appeal of this Court's summary judgment ruling and that the defendants' motion for a stay is DENIED in all other respects; it is further

ORDERED that Dean Witter shall transfer to the Trustee the funds contained in Mrs. Lundby's U.S. Government Trust account; it is further

ORDERED that the Trustee shall recover from Great Western Bank account # 068–640650–5 the sum of $20,000.00.