**In re Paul Eugene GABOR, Debtor.**

**Anne Piero Silagy, Trustee, Plaintiff,**

**v.**

**Gregory C. Gagnon, Nicole R. Gagnon, Defendants.**

**Bankruptcy No. 00–62148.
Adversary No. 01–6066.**

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

March 14, 2002.

Robert B. Trattner, Akron, OH, for plaintiff-trustee.

Joy Wagner, Andrew F. Peck, Barberton, OH, for defendants.

## MEMORANDUM OF DECISION

RUSS KENDIG, Bankruptcy Judge.

This cause came before the court for trial on December 10, 2001. Counsel were Robert B. Trattner for the plaintiff-trustee, Anne Piero Silagy, ("trustee"), and Joy S. Wagner and Andrew F. Peck for the defendants, Gregory Gagnon and Nicole Gagnon ("defendants"). This is a core proceeding over which the court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(E) and (H). The following constitutes the court's findings of fact and conclusions of law pursuant to Fed. R.Bankr.P. 7052.

## DISCUSSION

### Facts

The debtor, Paul Eugene Gabor (hereinafter "debtor"), filed his voluntary petition for relief under chapter 7 of the United States Bankruptcy Code on June 30, 2000. Debtor's schedules included no real property and only $305.00 of personal property consisting of cash, household goods and furnishings, and debtor's interest in a life insurance policy, all of which debtor claimed as exempt. While debtor scheduled neither secured claims nor unsecured priority claims, his unsecured non-priority claims totaled $107,172.12.

Debtor was unemployed at the time of filing and listed no monthly income. Debtor's only monthly expense consisted of the premium on his life insurance policy which totaled $13.75. Debtor's statement of financial affairs reflects no income derived from employment or business operation since 1998. In 1998 debtor's sole income totaled $59,086.00 and consisted of the withdrawal of the balance of his 401(k). Debtor's statement of financial affairs lists a Municipal Court judgment in favor of Citibank. Debtor's statement also lists three transfers of property.

In December 1999 debtor transferred his personal residence located at 8267 Deerfield Road, Marshallville, Ohio ("property") to defendants, his daughter and son-in-law. Debtor's statement of financial affairs contains a note indicating "sale was a loss." Defendants occupied the property from December 15, 1999 until September 1, 2000 when defendants moved to Florida after Mr. Gagnon accepted employment there. Upon leaving Ohio, defendants sold the property to David and Melinda Bort on September 1, 2001. The Borts are not parties to this action. After transferring his residence, debtor lived nearby at 8309 Deerfield Road, presumably his parents' residence, given other testimony in the case.

Debtor's two other transfers included the December 1999 transfer of a 1993 Chevy Cavalier valued at $1,500.00. Debtor notes the vehicle was purchased by debtor's parents for debtor's teenage daughter. Upon daughter's majority, debtor transferred title to her name. The final transfer involved a 1998 Chevy Camaro, listed as a $13,000.00 transfer to debtor's mother. Debtor's parents bought debtor this car and the title remained in debtor's name. Although debtor was to repay the debt to his parents, debtor later transferred the title to his parents. Ap-

parently debtor became injured, lost his employment and his driver's license, and could no longer afford the car. The transfer was to cancel the debt.

At the trial the court heard testimony from Robert Cerny ("appraiser"), an appraiser engaged by defendants, and both defendants. Debtor was deceased at the time of trial. In lieu of counsel's closing arguments at trial, the court permitted the parties to file posthearing written statements.

## Parties' Positions

Trustee filed her complaint to avoid and recover an alleged fraudulent transfer on June 19, 2001 pursuant to 11 U.S.C. §§ 544, 548 and 550 and O.R.C. §§ 1336.04 and 1336.05. Trustee seeks a judgment against defendants in the amount of $58,341.42.

Trustee alleges debtor transferred, within one year immediately preceding commencement of debtor's case, his personal residence to defendants for approximately $45,000.00. Trustee argues further that a note and mortgage in the amount of $40,708.58 in favor of First Merit Bank were satisfied at closing. Trustee alleges the property bore a tax value of $99,050.00 on the date of transfer. Trustee argues the transfer was fraudulent and therefore avoidable under 11 U.S.C. § 548(a)(1)(A) and (B) and that the value of debtor's equity is recoverable by trustee under 11 U.S.C. § 550(a).

Defendants' answer admits jurisdiction, venue and the filing of both the debtor's petition and trustee's complaint. Defendants admit purchasing debtor's property, but assert the purchase was made in good faith, debtor received a reasonably equivalent value in exchange for the transfer, and the sale was not fraudulent. Defendants admit purchasing debtor's residence within the one year period immediately preceding debtor's bankruptcy, but deny the balance of trustee's allegations under 11 U.S.C. §§ 544, 548, 550 and O.R.C. §§ 1336.04 and 1336.05. As an affirmative defense, defendants assert that trustee's complaint is barred by the doctrine of estoppel and request that the complaint be dismissed.

In her posthearing statement, trustee argued the property had a value of $108,000 at transfer, based upon appraiser's November 18, 1999 appraisal. See Trustee's Exhibit E. Trustee referenced debtor's testimony at the meeting of creditors where he indicated he owed all his scheduled creditors at the time of transfer. See Trustee's Exhibit C. Trustee reviewed appraiser's testimony, noting debtor told appraiser during the appraisal that debtor was transferring the property out of his name because of debtor's legal and financial difficulties. Trustee asserted defendants offered no evidence opposing the appraisal, save the $45,000 purchase price. Trustee argued defendants' efforts to improve the property were irrelevant to the property's value at transfer.

Trustee argued she met her burden with respect to all her state and federal allegations and that she proved several badges of fraud: 1) the transfer was to insiders; 2) the transfer involved substantially all of debtor's assets; 3) the debtor did not receive a reasonably equivalent value in exchange for the transfer; and 4) debtor was insolvent at the time of transfer, or was thereby rendered insolvent. Trustee argued these badges of fraud shifted the burden to defendants to establish the validity of the transfer and asserted defendants had not met their burden. Finally, trustee argued the record supported judgment against defendants in the amount of $63,000, based upon the appraisal of $108,000 and the purchase price of $45,000.

In defendants' posthearing statement, they indicated the issue before the court

was value. Defendants asserted the Cerny appraisal and the county tax appraisal were flawed and argued the court should not speculate as to the property value. Defendants reviewed the unusual circumstances surrounding the sale: 1) the property's deplorable condition; 2) defendants' improvements prior to the November 18, 1999 appraisal; 3) numerous latent defects affecting the property's true value; and 4) the fact that the appraised value was dependent upon the completion of repairs totaling $4,225, without which the property would be valued in the low $90,000 range. Defendants argued trustee failed to meet her burden with respect to debtor's receipt of less than a reasonably equivalent value in the transfer and trustee failed to prove debtor's attempts to hinder, delay or defraud creditors.

## Analysis

### Trustee's Avoidance Powers

The trustee may bring both state and federal causes of action to set aside a transfer or conveyance. The federal law action is premised upon 11 U.S.C. § 548.

State laws are applicable through 11 U.S.C. § 544. Section 544(b)(1) of the Bankruptcy Code permits the trustee to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title." *Wyle v. C.H. Rider & Family (In re United Energy Corp.)*, 944 F.2d 589, 593 (9th Cir.1991). Upon avoiding a transfer under section 544, "the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property from the initial transferee of such transfer" 11 U.S.C. § 550(a)(1).

 A creditor may avoid a transfer or an obligation found to be fraudulent under O.R.C. §§ 1336.04 and 1336.05. A transaction can be set aside as a fraudulent conveyance whenever it is made without fair consideration and when the conveyance will either render the transferor insolvent or when the transferor makes a conveyance to hinder, delay or defraud creditors. *John Deere Indus. Equip. Co. v. Gentile*, 9 Ohio App.3d 251, 459 N.E.2d 611 (1983); *see also Fifth Third Bank of Columbus v. McCloud*, 90 Ohio App.3d 196, 628 N.E.2d 131 (1993). If the debtor is rendered insolvent by the transaction, there is no requirement that the plaintiff in the fraudulent conveyance action establish any intent on the part of the debtor to hinder, delay or defraud. *McKinley Fed. S & L v. Pizzuro Enter., Inc.*, 65 Ohio App.3d 791, 585 N.E.2d 496 (1990).

 Accordingly, trustee may prevail in her constructive or actual fraudulent transfer claims by showing that debtor did not receive an equivalent value in exchange for the transfer *and* by showing either (1) that debtor was insolvent at the time of the transfer, or was rendered insolvent as a result thereof, or (2) that as a result of the transfer, debtor intended to, believed he would, or should have reasonably believed that he would, incur debts beyond his ability to pay as the debts matured. Trustee also must prove the existence of a creditor capable of avoiding the subject transfers under state law.

### Burden of Proof

 Trustee bears the initial burden of proof, by a preponderance of the evidence, on her fraudulent transfer claim. *In re Craig*, 144 F.3d 587 (8th Cir.1998). However, this burden may be shifted to the defendant upon showing certain "badges of fraud." *Tavenner v. Smoot*, 257 F.3d 401 (4th Cir.2001); *see also Cardiovascular & Thoracic Surgery of Canton, Inc. v. DiMazzio*, 37 Ohio App.3d 162, 524 N.E.2d 915 (1987); *Andrews v. United*

*States,* 69 F.Supp.2d 972 (N.D.Ohio 1999). These badges include inadequate consideration, transfer of the debtor's entire estate, debtor's insolvency as a result of the transfer, the relationship of the parties to the transfer, the reservation of an interest in the transferred property, and a threat or pendency of litigation. *See In re Maston,* 44 B.R. 880 (Bankr.S.D.Ohio 1984); *see also Baker & Sons Equip. Co. v. GSO Equip. Leasing, Inc.,* 87 Ohio App.3d 644, 622 N.E.2d 1113 (1993).

Trustee's complaint, including counts combining both federal and state law allegations, alleges:

(a) debtor made the transfer with the actual intent to hinder, delay or defraud his present or future creditors;

(b) debtor received a less than reasonably equivalent value in exchange for the transfer;

(c) debtor was insolvent at the time of the transfer or was rendered insolvent as a result of the transfer; and

(d) debtor intended to incur, or believed he would incur, debts that were beyond his ability to pay as they matured.

The following summary and comparison is provided because the different counts contain different elements and the existence of badges of fraud adds to the analysis.

| Statute Alleged & Required Elements | Did Pl. Meet Burden? | Badges of Fraud [1] | Did Δ Meet Burden or Rebut? |
| --- | --- | --- | --- |
| 11 U.S.C. § 548(a)(1)(A): | | | |
| transfer made with actual intent to hinder, delay or defraud present or future creditor(s) | YES | Sufficient to create presumption? YES | NO |
| 11 U.S.C. § 548(a)(1)(B): | | | |
| DB received less than a reasonably equivalent value in exchange for transfer *and* (1) DB insolvent at transfer or became insolvent thereby, *or* (2) DB intended to incur, or believed he would incur, debts beyond his ability to pay as matured | YES | Sufficient to create presumption? YES | NO |
| 11 U.S.C. § 544(b); O.R.C. § 1336.04(A)(1): | | | |
| transfer made with actual intent to hinder, delay or defraud creditor(s) | YES | Shifts burden to defendants? YES | NO |
| 11 U.S.C. § 544(b); O.R.C. § 1336.04(A)(2): | | | |
| DB received less than a reasonably equivalent value in ex- | YES | Shifts burden to defendants? YES | NO |

1. Badges of fraud may be created differently and result in a different effect under federal as opposed to state law. The differences are immaterial in the case at bar. See the cases cited herein.

| change for transfer **and** DB intended to incur, or believed he would, or reasonably should have believed he would incur, debts beyond his ability to pay when due | | | |
| --- | --- | --- | --- |
| 11 U.S.C. § 544(b); O.R.C. 1336.05(A): | | | |
| transfer made after claim of creditor arose **and** (1) DB did not receive a reasonably equivalent value in exchange for transfer, and (2) DB insolvent or became insolvent as a result | YES | Shifts burden to defendants? YES | NO |

### Debtor's Intent to Hinder, Delay or Defraud Creditors

█ Trustee asserts debtor transferred his residence to defendants with the actual intent to hinder, delay or defraud his creditors. Fraudulent intent is rarely proved by direct evidence. Debtor's intent need not be shown by direct, actual evidence, but can be proved through objective indicia of fraud or "badges of fraud." *In re Sergio, Inc.*, 16 B.R. 898 (Bankr.D.Hawai'i1981). In the presence of badges of fraud, discussed previously in this opinion, fraudulent intent can be presumed. *Staats v. Harper (In re Harper)*, 132 B.R. 349 (Bankr.S.D.Ohio 1991). To establish a fraudulent transfer, trustee must demonstrate debtor's insolvency and the lack of fair consideration for the transfer. If trustee is able to prove these elements, neither debtor's intent nor his knowledge is relevant. *Id.*

█ Badges of fraud can raise presumptions of actual fraudulent intent, and the presumptions can establish a prima facie case and shift burden to debtor to establish the absence of fraudulent intent. *Loeber v. Loeber (In re Loeber)*, 12 B.R. 669 (Bankr.D.N.J.1981); *see also Staats v. Harper (In re Harper)*, 132 B.R. 349 (Bankr.S.D.Ohio 1991). Although the presence of a single badge may only raise the suspicion of debtor's fraudulent intent, the confluence of several badges can be conclusive evidence of fraudulent intent, absent significantly clear evidence of debtor's legitimate supervening purpose. *Max Sugarman Funeral Home v. A.D.B. Investors*, 926 F.2d 1248 (1st Cir.1991); *see also F.D.I.C. v. Anchor Prop.*, 13 F.3d 27 (1st Cir.1994); *In re Warner*, 87 B.R. 199 (Bankr.M.D.Fla.1988).

█ Under 11 U.S.C. § 548(a)(1), a showing that debtor acted under circumstances precluding any reasonable conclusion other than that the purpose of a transfer was fraudulent as to creditors is reasonable proof of debtor's fraudulent intent. *Matter of Life Science Church of River Park*, 34 B.R. 529 (Bankr.N.D.Ind. 1983). *See also In re Ste. Jan–Marie, Inc.*, 151 B.R. 984 (Bankr.S.D.Fla.1993) (permitting trustee to avoid transfer as with "actual intent" only if evidence shows clear pattern of purposeful conduct.). In determining whether transfers are fraudulent, courts give close scrutiny to intrafamily transactions. *Prisbrey v. Noble*, 505 F.2d 170 (10th Cir.1974); *see also In re Roco Corp.*, 21 B.R. 429 (1st Cir. BAP 1982). Determination of actual intent requires subjective evaluation of debtor's motive. *In re Jeffrey Bigelow Design Group, Inc.*, 956 F.2d 479 (4th Cir.1992); *see also Hunter v. Society Bank & Trust (In re Parker Steel Co.)*, 149 B.R. 834

(Bankr.N.D.Ohio 1992); *In re Taubman*, 160 B.R. 964 (Bankr.S.D.Ohio 1993). In *White v. Lundby (In re McGuirl)*, 162 B.R. 630 (D.D.C.1993), trustee successfully avoided fraudulent transfer of debtor's property where debtor and his mother owned property and debtor removed his name, leaving only the mother's name. The court inferred fraudulent intent where debtor was receiving demand letters from creditors and debtor conceded it was his concern over financial difficulties which precipitated debtor's removing his name from the property.

 Trustee established debtor's fraudulent intent. She has raised several badges of fraud and defendants failed to rebut the presumptions created by trustee's evidence. The debtor transferred essentially all of his property: 1) in the face of actual or threatened litigation against debtor; 2) at a time of insolvency or other unmanageable indebtedness; 3) in the absence of fair consideration for the transfer; and 4) to a transferee enjoying a special relationship to the debtor. Although debtor's intent is at issue, defendants offered no legitimate purpose for debtor's actions which overcomes the otherwise conclusive evidence of his fraudulent intent. Even in the absence of the badges of fraud, debtor's intent appears obvious in light of the testimony and debtor's dire financial straits.

It is significant to note that intent is not required for several of the causes of action, but this element is met even for those which require proof of intent.

### Reasonably Equivalent Value

If trustee establishes the conveyance occurred, she must show there was no "fair consideration" under O.R.C. § 1336 *et seq.* The parties stipulated to the conveyance and trustee asserts debtor received less than fair consideration. O.R.C. § 1336.03 defines fair consideration as:

Fair consideration is given for property, or obligation:

(A) When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied; or

(B) When such property or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property or obligation obtained.

Similarly, under the bankruptcy law statute, 11 U.S.C. § 548(a)(1)(B), trustee must show debtor "received less than a reasonably equivalent value in exchange for such transfer."

 In determining the existence of fair consideration or equivalent value, courts require review of "all the surrounding circumstances to determine whether the transaction is fair." *John Ownbey Co. v. Commissioner*, 645 F.2d 540, 545 (6th Cir.1981). In assessing whether a challenged transfer is supported by reasonably equivalent value, courts generally compare the value of the property transferred with the value of that received in exchange for the transfer. *See Aristocrat Lakewood Nursing Home v. Mayne*, 133 Ohio App.3d 651, 729 N.E.2d 768 (1999); *Deitering v. Amann*, 1992 WL 127654 (1992). The test used to determine reasonably equivalent value in the context of a fraudulent conveyance requires the court to determine the value of what was transferred and to compare it to what was received. *Matter of Vitreous Steel Prod. Co.*, 911 F.2d 1223, 1234–35 (7th Cir.1990). Whether consideration supporting challenged transfer is "fair" under Ohio's Uniform Fraudulent Transfer Act must be determined from the standpoint of the debtor. *In re Structur-*

*lite Plastics,* 193 B.R. 451 (Bankr.S.D.Ohio 1995), *aff'd in part, rev'd in part,*[2] remanded at 224 B.R. 27 (6th Cir. BAP 1998).

Although the parties' respective values for the property may be controverted, at or about the time of the transfer, the Wayne County Auditor valued the property at $99,070. An appraisal commissioned by defendants valued the property at $108,000. Trustee argues the property was worth in excess of $100,000 at transfer. Appraiser, who testified as an expert, testified the property needed certain repairs, including replacing carpeting and vinyl flooring, resurfacing and painting walls, wood furnace piping, replacing broken windows and installing garage downspout splashblocks. Appraiser confirmed his opinion that the property was worth $108,000 in November 1999, and that the value would only increase following the noted repairs. Appraiser also noted features contributing to the home's value, including the much larger than average lot, improved lower level, both oil and wood heating, larger hot water heater, two-car garage and above-ground pool.

Defendants argue the property was overvalued at the time of transfer and was in poor condition, noting the lack of renovations since 1970, the existence of garbage, debris, and rodents, and the need for repairs to the roof, walls, doors, closets and the heating and air conditioning systems. Defendants argue the appraisal failed to account for numerous latent defects and for the amount of improvement previously undertaken by defendants. On cross-examination, appraiser defended his appraisal technique, *but distinguished between improvements which would bring more or less than a dollar-for-dollar increase in value.* Appraiser also indicated

he was unaware of certain improvements completed by defendants which if not completed could have reduced the appraised value, such as pest removal, the replacement of the roof, the repair of the fireplace and furnaces, the replaced sump pump, and the attention to doors, windows and closets. Defendants' posthearing statement challenged the validity of the Wayne County tax appraisal, based upon the auditor's failure to thoroughly inspect the property or to discover latent defects.

Viewing the transaction from debtor's standpoint, the debtor transferred property worth substantially in excess of $45,000. In exchange for the property, the debtor received only $45,000. Whatever the true value of the property may have been, the court finds the debtor lost substantial amounts of the accumulated equity in his home. Debtor received the payment of real estate taxes and a satisfaction of his mortgage to FirstMerit. In fact, nearly all closing expenses were assessed against debtor such that he had to pay $118.16 to close the transaction. A non-exclusive list of items assessed solely against debtor included defendants' loan origination fee, points, lender's inspection fee, lender's document preparation fee and underwriting fee, the title company's closing fee, all of the title examination fee, all of the title insurance charge, and even the buyers' policy premium. Debtor did not receive anything toward his substantial equity. Whether they realized it at the time or not, and whether the alleged condition of the property minimized it or not, defendants received a gift from debtor.

The court finds debtor did not receive a reasonably equivalent value in exchange for the transfer. Accordingly, trustee met

**2.** Reversed on other grounds related to the fair saleable value of debtor's assets and debt-

or's insolvency.

her burden of proof on this issue. Defendants offered insufficient evidence to support their allegations that the $45,000 purchase price represented the true value of debtor's home at the time of transfer. Accordingly, while defendants' evidence may impact the court's determination of the home's value, defendants failed to establish that debtor received a reasonably equivalent value in exchange for the transfer.

### Insolvency

Trustee asserts debtor was insolvent at the time of the transfer or that the transfer rendered him insolvent.

Ohio Revised Code § 1336.02(A) provides:

(1) A debtor is insolvent if the sum of the debts of the debtor is greater than all of the assets of the debtor at a fair valuation.

(2) A debtor who generally is not paying his debts as they become due is presumed to be insolvent.

■■■■■ In short, insolvency may be proved for purposes of the state law causes of action requiring such by proving either "balance sheet insolvency" or "equitable insolvency." *Ohio Corrugating Co. v. DPAC, Inc. (In re Ohio Corrugating Co.)*, 91 B.R. 430 (Bankr.N.D.Ohio 1988). Augmenting the traditional legal insolvency test, which was limited to a balance sheet analysis, Ohio courts recognize equitable insolvency.

"It [the definition of insolvency under section 1336 *et seq.*] also includes the debtor, who, although presently meeting his obligations as they become due, has incurred unmatured debts to such an extent that it is apparent he will not be able to meet them when they become absolute and matured. This is determined by considering the present 'fair and salable value' of his assets, and comparing that with the amount of his probable liability on his existing debts as they become absolute and matured." *Cellar Lumber Co. v. Holley*, 9 Ohio App.2d 288, 290–91, 224 N.E.2d 360, 363 (1967); *see also Toledo Trust Co. v. Poole (In re Poole)*, 15 B.R. 422 (Bankr. N.D.Ohio 1981).

■■■■■ Insolvency for the federal causes of action is limited to balance sheet insolvency. "Insolvency then is basically a balance sheet test: that is, a debtor is insolvent when the debtor's liabilities exceed the debtor's assets, excluding the value of preferences, fraudulent conveyances and exemptions." *Foreman Indus., Inc. v. Broadway Sand and Gravel (In re Foreman Indus., Inc.)*, 59 B.R. 145, 149 (Bankr.S.D.Ohio 1986). Insolvency determinations are factual issues. *Id.* at 149. Trustee bears the burden of proof with respect to the issue of insolvency under the Uniform Fraudulent Conveyance Act. *Yoder v. T.E.L. Leasing, Inc. (In re Suburban Motor Freight, Inc.)*, 124 B.R. 984 (Bankr.S.D.Ohio 1990); *Cellar Lumber Co. v. Holley*, 9 Ohio App.2d 288, 224 N.E.2d 360 (1967).

■■■■■ The court recognizes the record evidence of the value of debtor's property is not uncontroverted. Further, the court is unable to take a snapshot of debtor's assets and liabilities at the time of the transfer or immediately before or after the transfer. However, the court can look at debtor's petition, filed just six months following the transfer, and determine whether the transfer rendered him insolvent. The uncontroverted figures in debtor's petition reflect assets totaling $305 and liabilities exceeding $107,000. There had been little change in debtor's income and life for several years. Under any analysis, the court finds debtor was insolvent at the time of filing.

The debtor may also have been insolvent prior to or at the time of the transfer.

Debtor previously owned a home and held title to two vehicles. Using the property value assigned by the auditor and the vehicle values assigned by the debtor, debtor's assets totaled about $114,000. During the same period, debtor's balance on his mortgage to FirstMerit was about $40,000 and his other liabilities were at least a substantial portion of $107,000. The debtor was also facing a municipal court judgment and mounting debts. Given this loose analysis, debtor's pretransfer insolvency was evident. If the debtor's pretransfer insolvency amounted to about $33,000, and if this amount swelled to over $100,000 at the time of filing, there is no doubt the transfer was financially devastating to debtor. This is amplified by debtor's testimony at his meeting of creditors. See Trustee's Exhibit C.

The court finds the debtor was either insolvent at the time of the transfer, or was rendered insolvent as a result of the transfer. Accordingly, trustee has met her burden of proof on this issue. Defendants offered no evidence to the contrary.

### Existence of Creditor

 An action for constructive fraudulent transfer under O.R.C. § 1336.04 may be brought only by "a creditor which was owed both at the time of the transfer and at the time the action is brought, or, for purposes of a trustee's avoidance powers under section 544(b) of the Code, when the petition was filed." *SPC Plastics Corp. v. Griffith (In re Structurlite Plastics Corp.),* 224 B.R. 27, 30 (6th Cir. BAP 1998), *aff'g* 193 B.R. 451, 458 (Bankr.S.D.Ohio 1995). The Bankruptcy Court held that a trade creditor with the same open account relationship with the debtor at the time of the LBO [the transfer] and at the time of the bankruptcy filing qualified as a creditor under O.R.C. § 1336.04 even though claims may have related to different transactions with respect to the same account.

*Id.* at 458–59 (citing *Official Unsecured Creditor's Comm. v. Citicorp N. Am., Inc. (In re Aluminum Mills Corp.),* 132 B.R. 869 (Bankr.N.D.Ill.1991)).

The Sixth Circuit Bankruptcy Appellate Panel rejected this argument in *Belfance v. Bushey (In re Bushey),* 210 B.R. 95 (6th Cir. BAP 1997) stating

> "in an open account context, the 'existing' creditor relationship is not defined by the balance on the account, it is the availability and continuous use of the credit facility that determines whether an appropriate creditor interest is present against which to measure the propriety of a conveyance. Every change in the balance of an open account—including a change to or from 'zero'—is a 'new balance,' not a 'new debt' for fraudulent conveyance purposes." *Id.* at 102.

 Accordingly, the continuous account relationship between any holder of a prepetition claim and the debtor would satisfy the "existing" creditor requirement of O.R.C. § 1336.04 and provide trustee with standing under 11 U.S.C. § 544(b) to avoid the transfers. The application of O.R.C. § 1336.04 appears to be limited to existing creditors and does not permit a future creditor, whose claim matured following the subject transfer(s), to set them aside. *Ohio Corrugating Co. v. DPAC, Inc. (In re Ohio Corrugating Co.),* 91 B.R. 430 (Bankr.N.D.Ohio 1988) (citing *MacQueen v. Dollar Sav. Bank Co.,* 133 Ohio St. 579, 15 N.E.2d 529 (1938)). However, other creditors may rely on O.R.C. §§ 1336.05 and 1336.06 to avoid actual fraudulent transfers.

All this said, debtor's petition listed at least twenty-eight individual creditors holding claims against debtor at the time debtor filed his petition. At least two of these creditors had claims prior to the date of the transfer. Massillon Community Hospital filed a proof of claim indicating

its claim with the debtor arose on October 10, 1999. John H. Frieg, Esq., filed a proof of claim indicating his claim with the debtor arose on August 18, 1999. As both these creditors' claims precede debtor's transfer and remained at the date of filing, either would have standing the set aside the transfer under O.R.C. § 1336.04. Further, debtor testified at his meeting of creditors that he owed all his scheduled creditors at the time of the transfer. See Trustee's Exhibit C, Page 6, line 25, Page 7, line 1–2. Accordingly, trustee acquires these creditors' standing to set the transfer aside.

### Value of the Property at Transfer

The court must assign a value to the home at transfer to establish the amount of trustee's recovery. The court elects to begin with appraiser's value of $108,000. Although defendants raised issues concerning values assigned by the Wayne County Auditor and appraiser, the court finds appraiser's review to be more thorough and reliable, particularly because his testimony noted factors affecting value, he was subject to defendants' cross-examination, and he was credible and logical throughout his testimony.[3]

Defendants' evidence consisted solely of self-serving testimony and critiques of those who stated opinions of value based upon well-recognized principles of appraisal and facts about the particular property and its broader community. Defendants offered only their personal opinion. While these critiques weigh upon the appraiser's conclusion, defendants did not attempt to establish an alternative value. While trustee's evidence may have been imper-

fect, constructed as it was long after the fact, it was more than sufficient to carry the burden. Defendants would require the court to reject the good as undeserving of the perfect.

Appraisal and value are always more of a clinical diagnosis than a litmus test, especially when considered after the fact. The court cannot permit a manifest injustice due to the inability to locate a stone tablet with the number, just as an internist would not withhold antibiotics from a fevered patient, while conducting years of double blind studies to determine what would be perfect right for the now-deceased patient.

■ Determining reasonably equivalent value is a question of fact and considerable latitude must be allowed to the trier of facts. See De Aragon v. Chase Manhattan Bank, 457 F.2d 263 (1st Cir.1972); Mayo v. Pioneer Bank & Trust Co., 270 F.2d 823 (5th Cir.1959); Lipshie v. Wise (In re Wise), 119 B.R. 392 (E.D.N.Y.1990); In re Missionary Baptist Foundation of America, Inc., 24 B.R. 973 (Bankr. N.D.Tex.1982). Whether a transfer is made for reasonably equivalent value is a question of fact to be determined from all the evidence in a particular case. See Cooper v. Ashley Communications, Inc. (In re Morris Communications NC, Inc.), 914 F.2d 458 (4th Cir.1990); First Nat'l Bank in Anoka v. Minnesota Util. Contracting, Inc. (In re Minnesota Util. Contracting, Inc.), 110 B.R. 414 (D.Minn.1990); In re Crystal Medical Prod., Inc., 240 B.R. 290 (Bankr.N.D.Ill.1999).

■ Appraiser's value of $108,000 assumed certain remedial attention, includ-

---

**3.** Defendants both testified that they told appraiser of their need to receive a favorable appraisal in order to obtain approximately $60,000 in financing for remodeling and improvements. Defendants also testified that they concealed or disguised certain defects from appraiser's plain sight to qualify for the desired loan balance. In light of this confession, defendants' criticism that appraiser did not discover many defects is surreal and not helpful to defendants' credibility. Nonetheless, the defects enumerated by defendants are considered. The appraiser did explain the limits of the appraisal process.

ing replaced carpet and vinyl flooring, resurfaced and painted walls, repaired windows and the placement of splashguards beneath certain downspouts. Appraiser testified that although these repairs might cost only $4,225, without the improvements, value would be in the $90,000 range or in the 90s.

Defendants' cross-examination focused on details impacting value which appraiser admitted he had not considered. These included improvements defendants completed prior to the appraisal and which would have increased value, and latent defects which appraiser did not discover and which would have decreased value. Prior to the appraisal defendants 1) fumigated for ladybugs and other pests, and trapped/removed twenty-four rodents; 2) removed at least two dumpsters of trash and lawn debris; 3) cleaned all interior surfaces in the house; and 4) repaired or rehung several wooden doors and cabinet doors. Appraiser agreed that had these measures been uncompleted at the time of the appraisal, the value would have been lower. Further, appraiser did not discover 1) damaged blocks in the fireplace rendering the firebox unusable; 2) rusted and separated ductwork on the wood stove; 3) damaged wood flooring which was beneath carpeting on the sunken level; 4) water damage to kitchen/bathroom vanities; and 5) nonfunctioning faucets where water shut off to prevent further leaking. Appraiser agreed that if he had known of these defects at the time of the appraisal, the value would have been reduced.

Defendants offered evidence concerning the value of their remedial repairs and their costs in improving latent defects. Although this evidence was uncontroverted by trustee, the court finds defendants' repairs vastly overimproved the property (as they planned to live in the home indefinitely) and accordingly, defendants' evidence

of their *total* expenses are not directly relevant to the property's value at the time of transfer. The appraiser did testify as to the dollar effect of both underimprovements and overimprovements. Based upon all the evidence, the court determines the property was worth $85,333.50 at transfer. Defendants' purchase of the property for $45,000 failed to provide debtor with adequate consideration for his remaining $40,333.50 equity in the home. Accordingly, trustee is entitled to recover $40,333.50 from defendants.

## CONCLUSION

The court finds trustee established debtor transferred his home with fraudulent intent, debtor did not receive an equivalent value in exchange for the transfer, and debtor was insolvent at the time of the transfer or was rendered insolvent as a result thereof. Trustee also established the existence of a creditor capable, under state law, of avoiding the subject transfer. Accordingly, trustee met her burden of proof with regard to these allegations and the court need not review trustee's other allegations. Trustee established that debtor's transfer was fraudulent and she is entitled to recover debtor's equity in the property.

In addition to establishing the alleged fraudulent transfer, trustee also established certain badges of fraud recognized under state law. These include inadequate consideration, the relationship of the parties to the transfer, the transfer of the debtor's entire estate, the debtor's insolvency as a result of the transfer, and the threat of litigation at the time of the transfer. Accordingly, defendants must establish that the transfer was not fraudulent.

While defendants' evidence impacted the court's determination of value, and thus the value of the judgment herein, defendants' evidence was insufficient to estab-

**164**

lish that debtor received a reasonably equivalent value in exchange for the transfer. Defendants offered no evidence contradicting trustee's allegations concerning debtor's insolvency or the existence of a creditor providing trustee's standing. Also, defendants offered evidence insufficient to overcome various badges of fraud established by trustee. Defendants failed to establish that the transfer was not fraudulent.

The court finds Mr. Cerny's appraisal was completed in compliance with reasonable practices, however, notes certain appropriate reductions to the actual value of the home at the time of transfer based upon latent defects not discovered, certain remedial repairs which had not been done, and other remedial repairs which had already been completed at the time of the appraisal. Accordingly, the court assigns a value of $85,333.50 to debtor's home as of the time of transfer.

Based upon the foregoing, the court grants trustee judgment against defendants in the amount of $40,333.50. An appropriate order shall enter.

### ORDER

For the reasons set forth in the accompanying Memorandum of Decision, the court finds trustee's complaint is well taken and the same should be, and hereby is, **GRANTED.**

Trustee established that debtor's transfer of his home to defendants was fraudulent and that trustee may acquire creditors' standing under state law in order to avoid the transfer. Accordingly, trustee is granted judgment against defendants in the amount of $40,333.50.

It is so ordered.